Argued and submitted September 30, 1986, reversed and remanded February 11, reconsideration denied March 13, petition for review denied March 31, 1987

(303 Or 172)

## STATE OF OREGON,
*Appellant,*

*v.*

## DONNA CORRINE WILSON,
*Respondent.*

(85-3375; CA A39003 (control))

## STATE OF OREGON,
*Appellant,*

*v.*

## LEE VERN HELMS,
*Respondent.*

(85-3374; CA A39004)
(Cases Consolidated)

733 P2d 54

Thomas H. Denney, Assistant Attorney General, Salem, argued the cause for appellant. With him on the brief were Dave Frohnmayer, Attorney General, James E. Mountain, Jr., Solicitor General, Salem, and Mary M. Muller, Certified Law Student, Salem.

Stephen J. Williams, Deputy Public Defender, Salem, argued the cause for respondent Wilson. With him on the brief were Gary D. Babcock, Public Defender, and Diane L. Alessi, Deputy Public Defender, Salem.

Before Warden, Presiding Judge, and Van Hoomissen and Young, Judges.

VAN HOOMISSEN, J.

## VAN HOOMISSEN, J.

Defendants were charged with two counts of possession of controlled substances. ORS 475.992(4). The state appeals from pretrial orders allowing defendants' motions to suppress evidence seized pursuant to a search warrant.[1] ORS 138.060(3). The issue is whether the affidavit in support of the search warrant shows probable cause to believe that controlled substances and related evidence would be found on defendants' premises. The trial court concluded that it did no,t show probable cause. We disagree and reverse.

On October 13, 1985, Officer Nelson obtained a warrant to search a residence located at 2457 Wintergreen Avenue N.W., in Salem. The warrant was supported by his affidavit[2] and was executed on October 17. Methamphetamine and marijuana were found and seized.

Before trial, defendant Wilson moved

"for an order * * * suppressing all evidence, and the fruits thereof, seized from the residence located at 2457 Wintergreen Avenue N.W., Salem, Polk County, Oregon, on the 17th day of October, 1985, on the grounds and for the reasons that the warrant and affidavit in support thereof were 'stale' and that there was no documented prior drug activity at the aforesaid residence."

Similarly, defendant Helms moved

"for an Order suppressing all evidence seized by the police October 17, 1985, from the residence at 2457 Wintergreen Avenue NW, Salem, Polk County, Oregon * * * [on the ground that the search warrant] was based upon an Affidavit which did not contain probable cause to support a search warrant in that the information from the confidential reliable informant

---

[1] Defendants were separately indicted and filed separate motions to suppress. Their motions were consolidated for hearing before a single judge, who thereafter wrote an opinion letter allowing defendants' motions. That judge signed the order in the Wilson case; in his absence another judge signed the order in the Helms case. The cases are consolidated for appeal.

[2] After the usual recitals about Nelson's experience as a police officer and his special training in drug enforcement, the four-page, single-spaced affidavit states that he had a confidential, reliable informant who had participated in a controlled buy and who had spoken with Helms. It also states that the informant gave Nelson narcotics which the informant claimed to have purchased from Helms. Nelson observed his informant before and after the controlled buy. The informant had participated in a controlled buy on a previous occasion with a person whom he identified as defendant Helms.

set forth in the warrant does not establish probable cause to believe that methamphetamine and evidence of the purchase, possession and sale of methamphetamine would be found at 2457 Wintergreen Avenue NW, Salem, Polk County, Oregon."

The trial court heard oral argument on defendants' motions and thereafter issued a letter opinion allowing both motions to suppress.[3]

---

[3] The trial court's letter opinion states:

"This matter came before the court upon the motions of the defendants to suppress evidence seized via a search warrant. It is the contention of the defendants that the affidavit upon which the warrant was issued contained 'stale' information which would not authorize the issuance of a warrant. We examine the affidavit in the light of the claims made by the defendants.

"On the second page beginning at line 3 we learn that the informant had purchased a controlled substance from Helms 'on one previous occasion' when Helms was residing at a place other than the one sought to be searched. This statement may have had some value if the purchase had been made near in time to the making of the affidavit. 'One previous occasion' could be anytime from yesterday to the distant past. The reader is left to speculate which is not permissible for the purpose at hand.

"Beginning on line 14 of the second page we learn that a Salem detective *received information within the last three weeks* that Helms was in possession of a controlled substance. This tells us only that the information was received within the last three weeks but not when Helms had possession. Once again the reader is left to speculate.

" 'Within' 72 hours prior to the request for a warrant the informant contacted the affiant and a 'control buy' was arranged. The informant then entered the residence and purchased a quantity of methamphetamine from Helms. There is nothing in the affidavit which indicates when within the 72 hour period the purchase occurred. Once again one is left to speculate concerning a critical fact. Further a 'quantity' of methamphetamine is insufficient to justify a belief that any quantity would be found at the time the search warrant was issued.

"Beginning at line 5 page 3 we are told that the informant observed a 'quantity' of methamphetamine in the residence, that the informant can return at *anytime* in the future and purchase the substance and that the informant was told that Helms was going to receive another shipment of methamphetamine *soon* so that he could maintain a constant supply for sale. As noted above, with respect to the purchase of a quantity of methamphetamine, the observation of a 'quantity' of the controlled substance lacks sufficiency. The fact that the informant was told by someone that Helms was going to receive a shipment of methamphetamine *soon* is hearsay on hearsay with no showing that the 'someone' making the statement was knowledgeable or otherwise had credibility. The use of the word 'soon,' like 'on a previous occasion' invites speculation. Finally the statement that the informant can return at anytime in the future is contradicted by the statement that (in the future) there would soon be a shipment allowing Helms to maintain a constant supply.

"From the foregoing it is our conclusion that the affidavit does not disclose a likelihood that methamphetamine would be found at the described premises when the warrant issued. *See State v Kittredge/Anderson,* 37 Or App 603 and *State v*

■ ■   Searches based on search warrants are encouraged,
and marginal cases should be resolved in favor of the prefer-
ence accorded to warrants. *United State v. Ventresca,* 380 US
102, 109, 85 S Ct 741, 13 L Ed 2d 684 (1965); *State v. Tacker,*
241 Or 597, 601, 407 P2d 851 (1965). In close cases, the benefit
of the doubt should be given to the issuing magistrate. *Spinelli
v. United States,* 393 US 410, 419, 89 S Ct 584, 21 L Ed 2d 637
(1969); *State v. Marquardt,* 43 Or App 515, 603 P2d 1198
(1979). An affidavit supporting a search warrant is tested by
much less rigorous standards than those governing the
admissibility or weight of evidence at trial. *Spinelli v. United
States, supra,* 393 US at 419; *State v. Fink,* 79 Or App 590, 595,
720 P2d 372, *rev den* 302 Or 36 (1986); *State v. Diaz,* 29 Or App
523, 527, 564 P2d 1066 (1977). In *State v. Villagran,* 294 Or
404, 408, 657 P2d 1223 (1983), the Supreme court stated:

> "Our function, when faced with [an insufficiency] argu-
> ment, is to determine whether a neutral and detached magis-
> trate could conclude, based on the facts and circumstances
> shown by the affidavit, that there was probable cause to
> believe that the search would discover things specified in the
> affidavit in the places requested to be searched. *See* ORS
> 135.555(1), (2). We are to construe the supporting affidavit in
> a commonsense and realistic fashion. *State v. Tacker, [supra],*
> quoting from *United State v. Ventresca, [supra]." 294 Or at
> 408.

In *State v. Mellinger,* 52 Or App 21, 627 P2d 897 (1981), we
stated:

> "Whether a particular affidavit supports the magistrate's
> determination does not depend upon the existence of specific

---

*Scheer,* 49 Or App 937.

"Defendants' motions to suppress are allowed." (Emphasis in original.)

The order allowing Wilson's motion to suppress states, in relevant part:

" [T]his Court finds the search warrant affidavit insufficient as a matter of
law to establish probable cause to issue a search warrant as further detailed in this
Court's letter of January 22, 1986, a copy of which is attached hereto, incorporated
herein and made a part hereof, as Exhibit A.

"The Court being otherwise fully advised in the premises,

"It is, therefore, ORDERED that defendant's motion to suppress is granted
and all evidence acquired based upon the defective affidavit and the warrant,
including but not limited to all objects seized, observations made by police
officers, and the fruits of any of the aforementioned, are suppressed in their
entirety."

facts or information. Each affidavit must be examined in a common sense, nontechnical manner, looking at the facts recited and the reasonable inferences that can be drawn from those facts." 52 Or App at 25.

See also *State v. Ingram,* 251 Or 324, 326, 445 P2d 503 (1968).

■ ■　Oregon has incorporated the "two-part test" of *Aguilar/Spinelli*[4] into the statutory law of search warrants. ORS 133.545. *See State v. Villagran, supra,* 294 Or at 409 n 3; *State v. Souders,* 74 Or App 123, 128, 700 P2d 1050, *rev den* 300 Or 112 (1985). Under that test, an affiant relying on information from an unnamed informant must inform the magistrate of (1) the underlying circumstances from which the informant gathered his information and/or formed his conclusions ("the 'basis-of-knowledge' prong") and (2) the underlying circumstances from which the officer concluded that the informant was credible or that his information was reliable ("the 'veracity' prong.") "Basis-of-knowledge" is satisfied by the fact that the informant participated in the controlled buy himself and spoke with defendant Helms. The affidavit demonstrates that he obtained his knowledge first hand.

---

[4] In *Illinois v. Gates,* 462 US 213, 103 S Ct 2317, 76 L Ed 2d 527 (1983), the United States Supreme Court abandoned the "two-pronged test" established by its decisions in *Aguilar v. Texas,* 378 US 108, 84 St Ct 1509, 12 L Ed 2d 723 (1964), and *Spinelli v. United States, supra,* because the Court concluded that that test exalted form over substance:

"[T]he 'two-pronged test' has encouraged an excessively technical dissection of informant's tips with undue attention being focused on isolated issues that cannot sensibly be divorced from other facts presented to the magistrate.

"* * * * *

"The rigorous inquiry into the *Spinelli* prongs and the complex superstructure of evidentiary and analytical rules that sometimes have been implicit in our *Spinelli* decision, cannot be reconciled with the fact that many warrants are——quite properly—issued on the basis of nontechnical, common-sense judgments of laymen applying a standard less demanding than those used in more formal legal proceedings. Likewise, given the informal, often hurried context in which it must be applied, the 'built-in subtleties' of the 'two-pronged test' are particularly unlikely to assist magistrates in determining probable cause.

"* * * * *

"[T]he direction taken by many decisions following *Spinelli* poorly serves '[t]he most basic function of any government': 'to provide for the security of the individual and of his property.' The strictures that inevitably accompany the 'two-pronged test' cannot avoid seriously impeding the task of law enforcement." 462 US at 245. (Footnotes and citations omitted.)

■ The next question is whether the affidavit sufficiently established the informant's credibility or his reliability. The reliability portion of the veracity prong may be established by independent corroboration of an informant's information. *State v. Hayward and Hayward,* 18 Or App 128, 131, 523 P2d 1278 (1974). The fact that an informant turns over narcotics which he claims to have purchased is corroborative evidence. *See State v. Thacker,* 9 Or App 250, 496 P2d 729 (1972); *State v. Evans,* 1 Or App 489, 463 P2d 378, *rev den* (1970). A controlled buy alone may be sufficient to establish veracity through corroboration.[5] *See State v. Middleton,* 73 Or App 592, 596, 700 P2d 309, *rev den* 299 Or 522 (1985). In *State v. Kook,* 14 Or App 594, 595, 513 P2d 1189, *rev den* (1973), we held:

> "[T]he reliability of the informant was demonstrated * * * by police surveillance of the informant's entry and exit while he made a purchase of a baggie of marijuana at defendant's house, which marijuana was promptly thereafter delivered by the informant to the affiant police officer."

■ The affidavit in this case clearly establishes the informant's veracity. He had participated in a controlled buy on a previous occasion from a person whom he identified as defendant Helms. During the affiant's contact with the informant, the informant participated in another purchase at the residence that he had previously identified as that of defendant Helms and with the affiant watching the informant both before and after the buy. The substance purchased tested positive for methamphetamines. That purchase, in itself, was sufficient to establish the informant's reliability. Thus, the affidavit met the *Aguilar/Spinelli* test in ORS 133.545.

■ The informant also provided additional information regarding the sale to the effect that a "quantity" of methamphetamine had been observed inside the residence and that Helms had stated that he would be receiving additional methamphetamine to maintain a sufficient supply for sale. That information, together with the purchase, established

---

[5] In compliance with the general rules governing the construction of search warrant affidavits, the issuing magistrate could reasonably infer that a "controlled buy" is a method of determining the validity of an informant's purchase of narcotics under police direction and supervision. The trial court recognized that in its letter opinion. *See* n 3, *supra.* We explain the procedure in *State v. Davis,* 62 Or App 772, 662 P2d 13 (1983).

probable cause to believe that methamphetamine would be found in the residence for which the warrant was granted.[6]

The trial court also perceived a staleness problem with regard to the informant's information. In *State v. Kittredge/Anderson,* 36 Or App 603, 585 P2d 423 (1978), an affidavit stating that an informant had been in certain premises "within the past 96 hours" and had observed an unknown quantity of marijuana was found insufficient to establish probable cause. We concluded that, if the affidavit had been supplemented with additional information, the result might have been different. That information might have included (1) the amount of contraband seen, (2) the identity of the persons possessing the drugs and whether they normally occupy that residence and (3) the history of the suspects, including information about past drug activities at the premises. In *State v. Gribskov,* 45 Or App 403, 608 P2d 593, *rev den* 289 Or 209 (1980), we upheld an affidavit which stated that the informant had observed a quantity of marijuana "more than an ounce" in possession of the occupants of the premises within 72 hours before the making of the affidavit and which described the residence and its occupant and a previous drug sale at the location.

■ In this case, there was a 72-hour delay. The affidavit describes more than mere drug possession. The occupants sold drugs in the house and stated that more would be available, thereby implying that a continuing supply of contraband could be found there during the time interval. That was sufficient to overcome any staleness challenge. *See State v. Spicer,* 254 Or 68, 71, 456 P2d 965 (1969); *State v. Black/Black,* 36 Or App 613, 585 P2d 44, *rev den* 284 Or 521 (1978). We conclude that the trial court erred in allowing defendants' motions to suppress.

Reversed and remanded.

---

[6] The trial court was concerned with the hearsay nature of the statement that the informant had been told that he would soon receive a shipment of methamphetamine. That statement made to the informant was a statement against penal interest and thus does not, by itself, present a hearsay problem. OEC 804(3)(c); *see State v. Miller,* 19 Or App 604, 607, 528 P2d 1082 (1974), *rev den* (1975). In addition, the statement of an informant is properly considered in analyzing an affidavit. The probable cause determination need not be based only on evidence that would be admissible at trial.