Argued and submitted October 2, 1987, resubmitted In Banc February 2, affirmed September 14, reconsideration denied November 4, petition for review denied December 20, 1988 (307 Or 246)

# STATE OF OREGON,
*Respondent,*

*v.*

# CHARLES CARPENTER PRINCE,
*Appellant.*

(8605 1174; CA A42230)

760 P2d 1356

Robert J. McCrea, P.C., Eugene, argued the cause and filed the brief for appellant.

Terry Ann Leggert, Assistant Attorney General, Salem, argued the cause for respondent. On the brief were Dave Frohnmayer, Attorney General, Virginia L. Linder, Solicitor General, and Stephen F. Peifer, Assistant Attorney General, Salem.

VAN HOOMISSEN, J.

Warren, J., not participating.

## VAN HOOMISSEN, J.

Defendant appeals his conviction for manufacture and possession of a controlled substance. ORS 475.992. He contends that the trial court erred in denying his motion to suppress evidence seized pursuant to a search warrant. The issue is whether the supporting affidavit is sufficient. We affirm.

The first paragraphs of Officer Curths' affidavit detail his extensive training, experience and knowledge of marijuana growing operations, including an explanation of how they helped him conclude that defendant probably was growing marijuana.

The affidavit also relates information that was provided by three unnamed citizen informants. The first informant was a local resident who had reported to the police his suspicions of drug activity in the premises to be searched. On the face of the affidavit, the first informant appears to be a disinterested neighbor who initiated contact with the police and voluntarily provided information. The second and third informants also were local residents. They were contacted by the police during the course of their investigation. They likewise appear to be disinterested neighbors, who voluntarily provided information. All three informants, whose identities were known to the police, asked to remain anonymous because they feared reprisals. None of the informants was connected with the crime being investigated, and none was from the criminal milieu.

The first informant told the police that, about a week earlier, he had observed that three new roof vents had been installed on the shop located directly behind the mobile home located on the property to be searched, that the shop was always shut up and that it had been that way for the past year after the present tenants took possession. He stated that he had been suspicious about the shop being shut up and that, after the roof vents were installed, he became more suspicious, because there was no apparent reason for vents to be installed. He suspected illegal drug activity was going on in the shop.[1]

---

[1] Curths' affidavit states, in relevant part:

"Venting is also necessary for indoor marijuana grow operations as humidity and temperature are often controlled to produce a healthier and more valuable marijuana crop."

The second informant told the police that he had observed that the shop behind the mobile home was always shut up and that it had been like that during the year that the current tenants had lived there. He stated that previous tenants had had the doors open, "but now they are always shut." He stated that the current tenant told him that he was a river guide but that the tenant and the other people at the residence "are there at most times and do not keep a regular work schedule." He also stated that "there is no reason for roof vents to be put on the shop."

The third informant told the police that the current tenant of the premises had been there about a year, that prior tenants had the shop behind the mobile home open at times but now it was always closed. He stated that, about a year before the affidavit was prepared but *after* the current tenant had taken possession, he saw about twelve marijuana plants growing in the area of the shop and mobile home and that the tenant was present when the informant saw the marijuana plants. He stated that he was familiar with and could identify marijuana, having seen growing marijuana before. The shop was closed up at that time, glass windows were covered and the door was closed.

The affidavit relates that Curths and another officer drove by the property and observed a mobile home with a shop directly behind it which had three roof vents. The shop was closed, and its windows were covered. The officers saw a truck parked in the driveway next to the mobile home and the shop. Motor vehicle records showed that defendant owned the truck. Power company records, attached to the affidavit, indicated that defendant's brother, a co-defendant, was the utility customer of record and that power consumption had increased dramatically after defendant's brother became the customer.[2]

---

[2] The affidavit states, in relevant part:

"I obtained a copy of Consumer Power consumption rates for the 24823 Rowland Road address from January 1984 to the last reading for March 1986. A copy of those consumption rates are attached to and incorporated as Exhibit 'A' of this affidavit. From the power consumption records, I learned that David Prince took over as the subscriber in January 1985. Immediately after he started service power consumption increased from usage of the prior year (1984) for the same month period. Consumption for February 1984 was 571 kilowatts, compared with February 1985 for Price [sic] was 2,687 kilowatts. March 1984 was 2,777 kilowatts compared with April 1985 for Price [sic] was 4,311 kilowatts. May 1984 was 2,611 kilowatts compared with May 1985 for Prince was 3,609 kilowatts. The months of

The officers observed nothing about the property to explain the high power usage, the purpose for roof vents or the closed doors and the covered windows.

Defendant was charged on the basis of evidence found in the shop. He moved to controvert, based on inaccuracies in the affidavit and the affiant's alleged bad faith. He also moved to suppress the evidence, arguing that the affidavit failed to show probable cause. The trial court concluded:

> "I have decided that the defendants have not shown that the evidence presented before the issuing authority was not offered in good faith, was not accurate, and was not truthful. The facts and events in the affidavit by themselves, individually may be suspicious, but when the facts giving rise to the suspicions are all added together, the Court finds that there was probable cause to believe that the search would discover the things specified in the search warrant and that the fruits of the search warrant should not be suppressed."

Defendant was convicted after a stipulated facts trial.

Defendant first contends that the information given by the three unnamed citizen informants cannot be considered, because the affidavit fails to set forth their bases of knowledge or establish their credibility. *See* ORS 133.545(4); *Spinelli v. United States,* 393 US 410, 89 S Ct 584, 21 L Ed 2d 637 (1969); *Aguilar v. Texas,* 378 US 108, 84 S Ct 1509, 12 L Ed 2d 723 (1964).

■　　All three informants were local residents. The first informant initiated contact with the police. The others were contacted by the police in the course of their investigation. They reported independently that the present tenants of the premises had lived on the premises to be searched for about a

---

June, July, August, September and October of 1984 and 1985 were close for usage rates. The records show that power usage increased substantially again in November 1985. Usage for November 1984 was 3,724 kilowatts while November 1985 for Prince was 4,502 kilowatts. December 1984 was 2,744 kilowatts while December 1985 for Price [sic] was 5,748 kilowatts. Usage rates for Prince have continued to be high with January 1986 usage being 5,691 kilowatts. February 1986 usage was 5,250 kilowatts and March 1986 usage was 4,861 kilowatts. The air vents have just been installed in the month of April 1986.

"Dale Barnes of Consumer Power, the employee who furnished the power records for the Prince residence told me that for a single wide mobile home, a generous estimate of power usage would be 2,500 kilowatts he would expect to get a complaint from the subscriber, which he has not received in this instance."

year, that they kept the shop area "shut up," whereas prior tenants had not done that. Those reports were based on personal observations. The first informant's statement, that three roof vents were installed in the shop about a week before the affidavit was made, also was based on personal observation. The second informant's statement, that he knew of no reason to install the roof vents, that the tenants did not keep regular work schedules and that defendant had told him that he was a river guide were based on personal observation or firsthand knowledge. The third informant's statements that the shop windows were kept covered and about seeing marijuana plants growing outside the shop a few months after the present tenants took possession of the property was based on personal observation. Cross-corroboration among informants is a well-accepted method of demonstrating the validity of the information given. *See, e.g., State v. Jones,* 58 Or App 277, 648 P2d 869, *rev den* 294 Or 295 (1982); *State v. Hasselback,* 55 Or App 281, 637 P2d 1316 (1981), *rev den* 292 Or 825 (1982); *State v. Henderson,* 40 Or App 27, 594 P2d 419 (1979).

The affidavit does not include information regarding the informants' veracity. However, because the information came from citizens apparently unconnected with the crime being investigated, rather than from criminals or from persons who were criminally involved, the degree of proof needed to establish veracity is less. *See State v. Villagran,* 294 Or 404, 411-12, 657 P2d 1223 (1983); *State v. Montigue,* 288 Or 359, 363-65, 605 P2d 656 (1980); *State v. Schrag,* 21 Or App 655, 536 P2d 461, *rev den* (1975). The facts that one informant volunteered information and all three reported many of the same facts and that the officers were able independently to verify many of those facts by personal observations is evidence of the informants' veracity. *See State v. Souders,* 74 Or App 123, 129, 700 P2d 1050, *rev den* 300 Or 112 (1985); *State v. Hasselback, supra,* 55 Or App at 286; *State v. Henderson, supra,* 40 Or App at 31-32. We conclude that the similarity of the informants' information, when coupled with independent police verification, was sufficient to permit a reasonable magistrate to find that the informants were credible and that their information was reliable.

Defendant challenges the use of the third informant's statement that he had observed marijuana growing outside the shop about a year earlier, a few months *after* the present

tenants took possession of the premises. A magistrate is required to use common sense in evaluating the totality of the information presented. *See State v. Wilson/Helms,* 83 Or App 616, 620-21, 733 P2d 54, *rev den* 303 Or 172 (1987). The information demonstrates that marijuana was growing on the property after defendant became a resident and during a time when the shop was closed up and the power consumption had increased dramatically. When considered with all of the other information, it could lead a reasonable magistrate to conclude that there was an on-going marijuana growing operation on the property and that the outdoor growing was part of, or preceded, an indoor growing operation.

■ Defendant next contends that the information in the affidavit, taken as a whole, does not establish probable cause. The question is whether, on the basis of the facts and circumstances shown by the affidavit, a neutral and detached magistrate could conclude that there was probable cause to believe that the search would discover the things specified in the affidavit in the places requested to be searched. ORS 133.555(2); *State v. Anspach,* 298 Or 375, 380, 692 P2d 602 (1984).

■ In making that determination, we must construe the affidavit in a commonsense, nontechnical and realistic fashion looking at the facts recited and the reasonable inferences that can be drawn from those. *State v. Villagran, supra,* 294 Or at 408; *State v. Tacker,* 241 Or 597, 601, 407 P2d 851 (1965); *State v. Mellinger,* 52 Or App 21, 25, 627 P2d 897 (1981). An affidavit supporting a search warrant is tested by much less rigorous standards than govern the admissibility or weight of evidence at trial. *State v. Wilson/Helms, supra,* 83 Or App at 620; *State v. Harvey,* 53 Or App 478, 481-82, 632 P2d 487, *rev den* 291 Or 893 (1981). After-the-fact scrutiny by courts of the sufficiency of an affidavit should not take the form of *de novo* review. *See Illinois v. Gates,* 462 US 213, 236, 103 S Ct 2317, 76 L Ed 2d 527 (1983). The issuing magistrate's determination of probable cause should be paid great deference by a reviewing court, *Spinelli v. United States, supra,* 393 US at 419, and the resolution of doubtful or marginal cases should largely be determined by the preference to be accorded to warrants. *United States v. Ventresca,* 380 US 102, 109, 85 S Ct 741, 13 L Ed 2d 684 (1965); *State v. Tacker, supra,* 241 Or at 602; *State v. Harvey, supra,* 53 Or App at 482. Defendant bears the burden

of showing that the warrant is invalid. ORS 133.693(3); *State v. Coatney*, 44 Or App 13, 18, 604 P2d 1269, *rev den* 289 Or 107 (1980).

The affidavit sets out the affiant's training and experience in narcotics investigations, including his knowledge of growing and processing marijuana. That expertise may be considered in determining whether there was probable cause to issue the warrant. When evaluated in conjunction with other factors, an act which might appear innocent to a lay person may be incriminating when viewed by a trained and experienced police officer. Training and experience are especially important in analyzing power consumption information and the facts that the windows were covered, that the shop was kept closed and that several vents were installed in the shop for no obvious reason. Those facts are important in determining whether the officer's conclusions were reasonable and whether they, along with the other information in the affidavit, including the fact that marijuana had been seen growing a few months after the present tenants took possession of the property, provide probable cause to believe that defendant was growing marijuana.

Other information in the affidavit includes a report that the affiant and another officer observed the shop, that it was closed up and that defendant's vehicle was parked in the driveway. In addition, power company records showed that the power consumption rates had increased dramatically after defendant's brother became the user of record. We have previously recognized the importance of unusually high power consumption in evaluating the possibility of the existence of a marijuana growing operation. *See State v. Howe*, 88 Or App 595, 601, 746 P2d 746 (1987), *rev den* 305 Or 274 (1988); *State v. Christen/Hankins*, 79 Or App 774, 720 P2d 1303 (1986).

 Defendant argues that, in *Christen/Hankins*, we held that a high level of power consumption alone is not enough to show probable cause and that additional facts are required to obtain a valid warrant. However, trying to match facts patterns in search and seizure cases does not determine whether there was probable cause under the facts of the case at hand. Although specific facts in one case may not show probable cause, the same or similar facts, when supplemented with other facts may be sufficient for a finding of probable cause in

a different case. Each case must be evaluated on the totality of its own facts and circumstances. *State v. Mellinger, supra.*

■ Defendant argues that the affidavit does not show probable cause, because there is nothing in the facts that could not have been done lawfully by an innocent person. At the suppression hearing, defendant attempted to demonstrate such other types of conduct. However, that has never been the test. The relevant inquiry is whether the affiant has provided probable cause to believe that particular evidence will be found in a particular location. *State v. Villagran, supra,* 294 Or at 413. Simply because there might have been an alternative, innocent explanation for every condition detailed in the affidavit does not mean that a reasonable magistrate could not conclude that defendant was probably growing marijuana if the overall pattern of activity reasonably led to that conclusion. *See State v. Howe, supra,* 88 Or App at 601-02.

■ We conclude that the information provided by the informants coupled with the information independently verified by the officers, including the dramatic increase in power consumption and the history of growing marijuana on the property after the present tenants took possession, was sufficient to allow the magistrate to reasonably conclude that evidence of a marijuana growing operation would be found in the premises.

Affirmed.