Argued and submitted May 20, reversed and remanded October 26, 1988, reconsideration denied January 13, petition for review denied February 14, 1989 (307 Or 405)

## STATE OF OREGON,
*Appellant,*

*v.*

## ROBERT HOWELL,
*Respondent.*

(87-CR-503, 87-CR-514; CA A45650)

763 P2d 179

Jonathan H. Fussner, Assistant Attorney General, Salem, argued the cause for appellant. With him on the brief were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Dennis R. Ingram, Grants Pass, argued the cause for respondent. With him on the brief was Ingram & Rich, Grants Pass.

Before Warren, Presiding Judge, and Richardson and Rossman, Judges.

ROSSMAN, J.

**ROSSMAN, J.**

The state appeals a pretrial order suppressing evidence. The primary issue is whether the supporting affidavit contains sufficient facts to establish probable cause for issuance of certain search warrants.[1] We conclude that the affidavit is sufficient and reverse.

The warrants were based on an affidavit by Detective Durbin, which sets out his training, experience and knowledge of indoor marijuana growing operations, as well as that of Detective Barbero, with whom Durbin conferred. It also includes information which came from several named informants and Durbin's inquiries at the power company.

Durbin was initially contacted in October, 1985, by the son-in-law of one of defendant's neighbors on Riverbanks Road. He told Durbin that, about three years earlier, he had seen about sixteen marijuana plants growing in defendant's corn patch and that those plants disappeared several days later. He stated that, shortly thereafter, defendant erected a small, portable-type greenhouse from which he saw defendant carry marijuana. He also stated that defendant had fenced his property and built a large barn and that he could see "very bright" lights with a "blue hue" in constant use in the second story of the barn until defendant covered the windows with curtains. Barbero told Durbin that grow lights used in indoor marijuana grow operations are "extremely intense" and have a "blue hue." Durbin talked with that informant again on March 30, 1987, to confirm the above report.

On March 25, 1987, Durbin interviewed the Moberlys and the Dopps, defendant's next-door neighbors on Riverbanks Road until the fall of 1986. They said that, in the early 1980's, they also saw marijuana plants growing in defendant's corn patch and that those plants suddenly disappeared several days later. The Moberlys stated that defendant thereafter fenced his property, put up "no trespassing" signs and warned

---

[1] Separate warrants were issued to search each of defendant's three vehicles and both of his real properties. Neither party addresses the search of the vehicles, and the record shows that nothing was seized from them. Therefore, we address only the sufficiency of the affidavit to support issuance of the warrants to search defendant's real properties.

neighbors to stay away. The Dopps told Durbin that defendant never had a garden after that. They said that defendant did not appear to work but had made some rather expensive purchases. The Moberlys related that defendant was home about 95 percent of the time and that he told them that he did not have to work, because he had received a large inheritance from his father. However, they found defendant's explanation inconsistent with what they knew about his father—*i.e.*, that he had retired from the military and had driven an older inexpensive car.

Mrs. Moberly told Durbin that the neighbors shared a four-party telephone line and that, one day when she picked up the line, she heard defendant say, "Bulbs are expensive," and someone respond, "I know, but you can get two crops off of one bulb," before she hung up. She also reported that, during the early 1980's, she had written down license plate numbers of individuals who visited defendant. Durbin ran criminal history checks on the owners of those vehicles and found that one of the visitors had been arrested in 1974 for possession of marijuana and that another had been convicted of cultivating marijuana in 1982.

The Dopps described defendant as "very secretive" and stated that he asked them several times why they were "spying on him." They also said that defendant built a barn, which he always kept closed, and that they heard what sounded like exhaust fans in the second story of the barn going on and off at various times during the day and night. Durbin knew that air circulation is important for the growth of marijuana and exhaust fans are used for that purpose. Durbin learned through the County Assessor that the barn was built in 1981 and was plumbed for water. The Dopps told Durbin that defendant had no livestock. Durbin knew that growing marijuana requires a continuous supply of water. He also learned that defendant told the assessor that the barn was to be used for storage and that defendant refused to let the assessor enter the barn for inspection.

Concerning Durbin's investigation of defendant's power usage, the affidavit says:

"I [Durbin] wanted to determine whether or not there was any unusual amount of electricity used at [defendant's] residence which would indicate that he was involved in an indoor

[marijuana] growing operation. I have incorporated the information which I received from Customer Service into the three pages of Exhibit 'B' which I have attached hereto and incorporated by reference. Customer Service and I discussed the electricity used at 5947 Riverbanks Road. We noticed that beginning in June of 1986, the electrical consumption decreased significantly. Customer Service then advised me that the customer which was receiving electricity at 5947 Riverbanks Road was an individual by the name of Robert E. Howell. She then advised that Mr. Robert Howell was also receiving electricity at another address which is 1725 Southside Road. I personally know this address to be in Josephine County, Oregon. She gave me the information concerning electrical consumption at that residence, which is also part of Exhibit 'B.' Customer Service advised that Mr. Howell was receiving the bills for both of these electrical services at his address on 5947 Riverbanks Road. I feel the significance of Exhibit 'B' is that while power consumption decreased at 5947 Riverbanks Road beginning approximately June of 1986, there was a corresponding increase in power consumption at 1725 Southside Road approximately four months later.

"On March 31, 1987, I made contact with Jim Tabler of Pacific Power and Light Company. Mr. Tabler is the manager of the local Pacific Power and Light office. We reviewed the figures in Exhibit 'B.' Mr. Tabler advised that the amount of electricity used at 5947 Riverbanks Road was extremely high when it was over 4000 units used. He further advised that the usage for July, 1986, through March of 1987, would be appropriate for a house the size at 5947 Riverbanks Road when the property was being heated by something other than electricity. Upon reviewing the figures for 1725 Southside Road, Mr. Tabler indicated that the consumption during the winter months of 1986 and 1987 was very high for a single-wide mobile home but that it was conceivable that the indicated amount of electricity could be used if the structure was heated continuously by electrical heat."

Exhibit "B" shows that usage was over 4000 kwh at defendant's Riverbanks Road property for two of the five months listed in 1984, for nine months in 1985, and for the first four months of 1986. Exhibit "B" also shows that, beginning in May, 1986, the power usage at defendant's Riverbanks Road property decreased significantly, while the power usage at his

Southside Road property increased.[2] Durbin stated that he was told by the power company that defendant became the power subscriber at the Southside Road address in May, 1986.

The previous owner of the Southside Road property told Barbero that he had heated the mobile home with electricity supplemented by wood heat and used the shop, which was wired for 220 volts, two days a week for his welding business. According to exhibit "B," the previous owner's highest winter bill was $167 (3340 kwh) in January, 1985. Defendant's highest winter bill at Southside Road was $256 (4891 kwh). Durbin stated that it is his experience that marijuana grow lights require 220 volts.

Durbin watched defendant's properties the week before the warrants were issued. He stated that he saw no activity at the mobile home on the Southside Road property and that it appeared to be uninhabited. However, he saw firewood stacked around the shop and smoke coming from the chimney, and on the morning of March 27, 1987, he saw defendant's pickup backed up to the shop. He said that he also saw defendant going in and out of the shop and noted that he always closed the door. Durbin also said that defendant eventually loaded a large metal tank, which an employe of a welding business later identified from a photograph as a propane gas tank, into the back of the pickup. Durbin said that his experience is that indoor marijuana growing operations require heat above the outside temperature, especially during

---

[2] Exhibit B shows the following power usage:

| Date | Riverbanks Road | Southside Road |
|------|-----------------|----------------|
| 1/86 | 6494 | 1375 |
| 2/86 | 5951 | 1087 |
| 3/86 | 4757 | |
| 4/86 | 4234 | |
| 5/86 | 2761 | 3141 |
| 6/86 | 1120 | 1759 |
| 7/86 | 723 | 3267 |
| 8/86 | 614 | 683 |
| 9/86 | 776 | 864 |
| 10/86 | 686 | 1657 |
| 11/86 | 660 | 3023 |
| 12/86 | 797 | 4891 |
| 1/87 | 1085 | 4358 |
| 2/87 | 669 | 4351 |
| 3/87 | 675 | 3910 |

the winter and spring months and that propane is an exceptionally good source of heat, because it increases the amount of carbon dioxide, which enhances the growth of marijuana.

Defendant's neighbor on Southside Road said that, shortly after defendant bought that property, he fenced it. She had seen no activity or traffic at the property except when defendant visited the property with his dogs. She said that defendant told her that he had purchased the property with money inherited from his uncle.

Durbin's surveillance of defendant's Riverbanks Road property indicated that he was still living in that house, because several of his vehicles were parked there, firewood was piled around the house and smoke was coming from the chimney. Durbin noted that, at that time, the second story windows of the barn were open and were not covered by curtains, and he noticed no fans at or near the barn. According to the Postal Service, defendant received all of his mail at the Riverbanks Road address.

■ The state contends that the information recited, taken as a whole, constitutes probable cause to believe that defendant began a marijuana growing operation outdoors at his Riverbanks Road property, subsequently moved it into the barn at that address and then moved it into the shop at his Southside Road property. Probable cause "means that the facts upon which the warrant is premised must lead a reasonable person to believe that seizable things will probably be found in the location to be searched." *State v. Anspach,* 298 Or 375, 380, 692 P2d 602 (1984).

■ Affidavits must be read in a realistic and common sense manner. *State v. Villagran,* 294 Or 404, 415, 657 P2d 1223 (1983). Sufficiency of an affidavit depends not only on the facts asserted, but also on the reasonable inferences which may be drawn from those facts. *State v. Anspach, supra,* 298 Or at 381. Doubtful or marginal cases should be resolved in favor of the preference to be accorded search warrants. *United States v. Ventresca,* 380 US 102, 85 S Ct 741, 13 L Ed 2d 684 (1965); *State v. Tacker,* 241 Or 597, 407 P2d 851 (1965).

■ The affidavit sets out Durbin's training and experience in narcotics investigation, particularly as to growing and processing marijuana. That expertise is an important factor to

be considered when evaluating the other information contained in the affidavit, because "an act which might appear innocent to a lay person may be incriminating when viewed by a trained and experienced police officer." *State v. Prince,* 93 Or App 106, 113, 760 P2d 1356 (1988). Durbin's training and experience are especially important in analyzing the power consumption information in this case as well as the facts that bright lights with a blue hue were seen in the barn, exhaust fans were heard, the barn windows were covered, defendant was seen loading a propane tank into his pickup from the Southside Road shop and the shop was always kept closed.[3] Those are significant facts in determining whether the officer's conclusions were reasonable and whether they, together with the other information in the affidavit, including that defendant had been seen growing marijuana at his Riverbanks Road property, provided probable cause to believe that defendant had an ongoing marijuana growing operation at Riverbanks Road until about May, 1986, which he then moved to the Southside Road property.

The affidavit also includes Durbin's surveillance of both properties, which revealed that defendant apparently lived at the Riverbanks Road property and used only the shop at the Southside Road property, that he always kept the shop closed up and that he was seen loading a propane tank from the shop into his pickup. In addition, the power company records disclose an extremely high consumption of electricity at the Riverbanks Road property after August, 1984, and before April, 1986, when it decreased dramatically. That decrease directly corresponds with a significant increase in power usage at the Southside Road property, even though only the shop was being used there. Given defendant's history of cultivating marijuana at Riverbanks Road and the fact that he continued to live there after he had apparently moved his growing operation to the Southside location, it is reasonable to conclude that, as the affidavit stated, "marijuana cultivation implements, cultivation records and other written evidence

---

[3] Copies of publications on how to grow and process marijuana, which had been seized from marijuana growers in the past, were also attached to the affidavit to corroborate Durbin's conclusions regarding the use of electricity, propane and exhaust fans for growing marijuana. *See State v. Donahue,* 93 Or App 341, 346, 762 P2d 1022 (1988).

pointing to the identity of individuals involved in the cultivation of marijuana," would be found there as well as at the Southside Road address. *See State v. Villagran, supra,* 294 Or at 413.

▓ Defendant argues that the informants' observations that they saw marijuana growing outside at his Riverbanks Road property in the early 1980's were too remote to be considered in determining whether the affidavit established probable cause to justify the issuance of warrants on April 1, 1987. In effect, defendant asserts a staleness argument. It is fundamental that probable cause must exist at the time a warrant issues. However, that does not mean that, simply because some information in an affidavit is old, a magistrate must exclude it when deciding whether the requisite probable cause exists. On the contrary, "a magistrate is required to use common sense in evaluating the *totality* of the information presented." *State v. Prince, supra,* 93 Or App at 112 (emphasis supplied); *see State v. Wilson/Helms,* 83 Or App 616, 620, 733 P2d 54, *rev den* 303 Or 172 (1987).

Defendant also argues that the facts here are sufficiently distinguishable from those in *State v. Christen/Hankins,* 79 Or App 774, 720 P2d 1303 (1986), and thus do not constitute the requisite probable cause. However, as we said in *State v. Prince, supra,* 93 Or App at 113:

"[T]rying to match fact patterns in search and seizure cases does not determine whether there was probable cause under the facts of the case at hand. Although specific facts in one case may not show probable cause, the same or similar facts, when supplemented with other facts may be sufficient for a finding of probable cause in a different case. Each case must be evaluated on the totality of its own facts and circumstances."

*See also State v. Donahue, supra,* n 3.

▓ Defendant also attempts to argue that the affidavit does not show probable cause by offering lawful explanations for conditions described in the affidavit. However,

"[s]imply because there might have been an alternative, innocent explanation for every condition detailed in the affidavit does not mean that a reasonable magistrate could not conclude that defendant was probably growing marijuana if the

overall pattern of activity reasonably led to that conclusion."
*State v. Prince, supra,* 93 Or App at 114.

*See also State v. Donahue, supra,* n 3, 93 Or App at 347.

We conclude that the information provided by defendant's neighbors, together with the information that Durbin obtained independently, was sufficient to provide probable cause to believe that evidence of a marijuana growing operation would be found on both of defendant's real properties.

Reversed and remanded.