Argued and submitted October 26, 1990, affirmed May 22, reconsideration allowed by opinion September 11, 1991
See 108 Or App 766 (1991)

STATE OF OREGON,
*Respondent,*

*v.*

ALLAN BENJAMIN MORRISON,
*Appellant.*

STATE OF OREGON,
*Respondent,*

*v.*

DOUGLAS NEIL BARTEE,
*Appellant.*

(88-07-1542-C, 88-07-1542-C4;
CA A62301 (Control), A62627)
(Cases Consolidated)

812 P2d 832

Ingrid A. McFarlane, Deputy Public Defender, Salem, argued the cause for appellants. With her on the brief was Sally L. Avera, Public Defender, Salem.

Jas. Adams, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Before Buttler, Presiding Judge, and Rossman and De Muniz, Judges.

DE MUNIZ, J.

## DE MUNIZ, J.

After a trial to the court on stipulated facts, defendants were convicted of manufacture and possession of a controlled substance. ORS 475.992(1), (4). They claim that the court erred in denying their motions to suppress and motions to controvert. We affirm.

A magistrate issued a warrant to search a farm near Burns for evidence of a marijuana grow operation inside a barn on the property. The police executed the warrant and seized evidence of the crime. Defendants moved to suppress all of that evidence, claiming that the search warrant was invalid, because the affidavit supporting it was insufficient. ORS 133.673(1).[1] They also filed motions to controvert the evidence in the search warrant affidavit. The motions were accompanied by affidavits of counsel. ORS 133.693(2).[2] The court held a hearing and later issued an opinion and order denying the motions to

---

[1] ORS 133.673(1) provides:

"Objections to use in evidence of things seized in violation of any of the provisions of ORS 133.525 to 133.703 shall be made by a motion to suppress which shall be heard and determined by any department of the trial court in advance of trial."

[2] ORS 133.693 provides:

"(1) Subject to the provisions of subsection (2) of this section, in any proceeding on a motion to suppress evidence the moving party shall be entitled to contest, by cross-examination or offering evidence, the good faith, accuracy and truthfulness of the affiant with respect to the evidence presented to establish probable cause for search or seizure.

"(2) If the evidence sought to be suppressed was seized by authority of a search warrant, the moving party shall be allowed to contest the good faith, accuracy and truthfulness of the affiant as to the evidence presented before the issuing authority only upon supplementary motion, supported by affidavit, setting forth substantial basis for questioning such good faith, accuracy and truthfulness.

"(3) In any proceeding under subsection (2) of this section, the moving party shall have the burden of proving by a preponderance of the evidence that the evidence presented before the issuing authority was not offered in good faith, was not accurate and was not truthful.

"(4) Where the motion to suppress challenges evidence seized as the result of a warrantless search, the burden of proving by a preponderance of the evidence the validity of the search is on the prosecution.

"(5) The court shall determine whether, under applicable law, any inaccuracy, untruthfulness or lack of good faith requires suppression."

suppress and the motions to controvert.[3] We conclude that the court erred in denying defendants' motions to controvert, but did not err in denying their motions to suppress.

A search warrant must be supported by evidence[4] that is sufficient to establish probable cause. *State v. Anspach,* 298 Or 375, 381, 692 P2d 602 (1984). Defendants assert that some or all of the assertions made here in the affidavit supporting the search warrant must be disregarded, because they are inaccurate, untruthful or not offered in good faith. ORS 133.693(2). They also assert that some or all of the assertions must be disregarded, because the observations and information supporting them were obtained from earlier unlawful searches. *See State v. Donahue,* 93 Or App 341, 346, 762 P2d 1022 (1988), *rev den* 307 Or 303 (1989).

We first examine whether defendants controverted the assertions made in the search warrant affidavit. The affiant, Officer Brady, first recounts his experience as an officer with the Oregon State Police narcotics unit. He then states that Officer Hickey's son told Hickey, who in turn told Harney County Sheriff Glerup, who in turn told Brady, that he had delivered crushed rock in front of a structure on the farm that he described as a "heavily-padlocked shop." Hickey's son described a person at the farm as "heavy built, 30's, dark brown hair and beard." That person paid for the rock with $250 in cash. On the basis of a conversation between them, Hickey's son concluded that the person knew "nothing about farming." Brady also stated that Glerup reported that Hickey, while standing on property adjoining the farm, had observed a "large gray machine, covered with a green plastic tarp" near the barn and had overheard parts of a conversation between two of the defendants in which they referred to a generator and the need to work on getting water to the barn.

---

[3] Two motions, each relying on somewhat different factual assertions, but taking the same basic approach, were filed. However, we need not distinguish between the two, because the defendants in this appeal and their codefendants in *State v. Burns/Kenney,* 107 Or App 380, 812 P2d 837 (1991), joined in each others' motions.

[4] Evidence is usually supplied in the form of written affidavits but may include oral testimony. *See* ORS 133.545(5).

■  Defendants argue that the information that Hickey's son provided was false[5] and that the conversation Hickey overheard could not have been heard without the use of electronic enhancement devices. However, those arguments draw into question the truthfulness and accuracy of the events recounted by the *declarants*. That is improper, because a motion to controvert under ORS 133.693(2) properly attacks only the truthfulness, accuracy and good faith of the *affiant. State v. Hitt,* 305 Or 458, 464, 753 P2d 415 (1988); *State v. Dunning,* 81 Or App 296, 298, 724 P2d 924 (1986).

■  Defendants also argue that Brady withheld "crucial facts" and that the omission of those facts constitutes bad faith. At the hearing, it was revealed that the police had used an assortment of vision enhancement devices such as spotting scopes, high-powered camera lenses with multipliers, binoculars, probe-eye infrared sensors and night-vision goggles in their investigation. The spotting scopes, binoculars and camera lenses provided magnification over the naked eye of at least eight-fold and as much as sixty-fold. In addition, officers were able to "see heat" by using an infrared detector and to observe the checking and sealing of the barn for light leaks during the night by using night-vision goggles. Brady disclosed the use of the detector in the search warrant affidavit, but did not discuss the use of the other high-tech vision enhancement equipment. Brady also omitted any reference to an investigation in which officers, posing as tax assessors, entered the property. That investigation revealed no incriminating evidence.

Defendants argue that Brady "must have known" or "suspected" that the omission of that material would have "detracted from the probable cause determination" and "borne poorly" in the magistrate's evaluation. They argue that it was bad faith to leave that information out.

Although defendants challenged Brady's good faith, he was not called as a witness to explain his motivation for omitting that material. Defendants had the burden

---

[5] They argue that the barn had one ordinary padlock and that no one at the property matched the description of the person that Hickey's son provided.

to show that the evidence presented before the issuing authority was not offered in good faith. ORS 133.693(3). They failed to sustain their burden. The record supports the court's implicit finding that Brady accurately and truthfully recounted declarants' hearsay statements and that he acted in good faith in securing the search warrant. *Ball v. Gladden,* 250 Or 485, 487, 443 P2d 621 (1968); *State v. Ritter,* 71 Or App 282, 288, 692 P2d 158 (1984).

■ In the affidavit, Brady also states that defendant Bartee, who was working at the farm, had been convicted of possession, delivery and manufacture of a controlled substance. The trial court made a finding that Bartee had been convicted of possession only. The truthfulness of the affiant was controverted on that point.[6] Consequently, the court erred, because the motion to controvert should have been granted.[7]

■ The error does not require reversal, however, because allowance of a motion to controvert does not necessarily require the allowance of a motion to suppress. If a court finds an inaccuracy and allows a motion to controvert, it must reexamine the search warrant affidavit, "relying only on the accurate parts of the affidavit and disregarding the inaccurate parts." *State v. Hughes,* 20 Or App 493, 501, 532 P2d 818 (1975). The court must determine whether the remaining material is sufficient to establish probable cause.

■ We will not pause here to review that reexamination process, because defendants' motion to controvert was not the sole basis of their challenge to the validity of the search warrant. Defendants argued, and the trial court

[6] In the affidavit, Brady does not state the source of the information. He simply states it as a fact.

[7] In *State v. Johnson,* 26 Or App 185, 552 P2d 554 (1976), the defendant moved to suppress evidence and filed a motion to controvert. The search warrant affidavit alleged that a garage was attached to the house that police wanted to search, but testimony showed that the garage was not attached. 26 Or App at 188. We concluded that the inaccuracy "did not deprive the affidavit of the requisite showing of probable cause. Thus the trial court did not err in denying defendant's motion to controvert." 26 Or App at 189. We should have said that the court did not err in denying the motion to *suppress* because, logically, a motion to controvert must be granted when the defendant successfully controverts the affiant's truthfulness, accuracy or good faith.

agreed, that Brady made assertions in his affidavit about observations or information from earlier unlawful searches. If a search is unlawful, assertions about observations or information obtained in or derived from that search must be excised from the affidavit, unless the state shows that the matter asserted would have been discovered irrespective of the unlawfulsearch. ORS 133.683;[8] *State v. Miller,* 300 Or 203, 228, 709 P2d 225 (1985), *cert den* 475 US 1141 (1986); *State v. Crossen,* 21 Or App 835, 838, 536 P2d 1263 (1975).

In the affidavit, Brady states that, on April 16, 1988, the same day that Hickey overheard the conversation about the generator, Hickey stopped a truck that he had observed earlier at the farm. The truck was towing a trailer loaded with hay. During the stop, Hickey identified defendant Burns as the driver. At the hearing, defendants argued that the stop was illegal.

In its opinion, the trial court excised from Brady's affidavit "all matters perceived through the use of enhancement devices," assertions about heat observations detected by the infra-red detector and evidence of Burns' identity obtained in the traffic stop by Hickey. The court excised that evidence, apparently because it concluded that it had been obtained unlawfully.[9]

In addition to the assertions described above, Brady states that, on April 26, 1988, he joined Glerup to observe the property from the adjoining land. Brady observed a piece of machinery and a 55-gallon drum by the side of the barn. Both items were covered with a green tarp. He also observed a large fuel truck nearby. About a week later, Brady went back to his observation point and saw

---

[8] ORS 133.683 provides:

"If a search or seizure is carried out in such a manner that things seized in the course of the search would be subject to suppression, and if as a result of such search or seizure other evidence is discovered subsequently and offered against a defendant, such evidence shall be subject to a motion to suppress unless the prosecution establishes by a preponderance of the evidence that such evidence would have been discovered by law enforcement authorities irrespective of such search or seizure, and the court finds that exclusion of such evidence is not necessary to deter violations of ORS 133.525 to 133.703."

[9] Our analysis does not require us to determine whether the trial court's conclusion on any of those points was correct.

that the fuel truck was then covered completely with a large green tarp. He saw someone check the tarp and then enter a small plywood building that had been constructed in the intervening week. The subject peered around corners and appeared to be watchful. All of those observations were with the naked eye. That same day, police learned that the utility account for electric power to the property was listed in defendant Burns' name. Previous discussions with law enforcement officials within the region disclosed that Burns was a known narcotics trafficker, who had provided capital to finance other marijuana grow operations.

Defendants argue that the court should have excised all assertions about Burns' criminal record as fruit of the poisonous tree, because that information was *derived from* learning Burns' identity in the purportedly unlawful automobile stop. ORS 133.683. The state argues that information about Burns' involvement in previous marijuana grow operations would have come to light irrespective of learning his identity in the automobile stop, because the utility records, which were obtained after the automobile stop and after learning about Burns' criminal record, were an independent source of his identity. The court's denial of the motion to suppress supports the implicit finding that the state proved by a preponderance of the evidence that the identity evidence would have been discovered from an independent source. ORS 133.683.

On May 10, 1988, Brady noted a "steady mechanical hum" coming from the small plywood building, strengthening his suspicion that the building contained a generator. On May 31, 1988, police learned that the property had been sold to Burns. On June 2, 1988, Brady observed the property in darkness. He heard a hammering noise from inside the barn. Although no light was visible from the outside of the barn, light was visible when the door was opened. From his training, Brady knew that indoor marijuana grow operations require the use of artificial lighting that requires a great deal of electrical power. Growers use electrical generators to avoid consuming large and suspicious amounts of electrical energy from utility companies. Generators require large amounts of fuel. To

avoid drawing attention from passersby, growers seal openings in the structure to prevent the escape of light.

■      The court stripped Brady's affidavit of inaccuracies and of information obtained in purportedly unlawful searches and reexamined it to determine if the remaining assertions established probable cause. In our review, we look at the remaining assertions and the reasonable inferences that may be drawn from them in a "commonsense, nontechnical and realistic fashion." *State v. Prince,* 93 Or App 106, 112, 760 P2d 1356, *rev den* 307 Or 246 (1988). Detailed observation of activity that is consistent with large scale indoor marijuana cultivation, *see State v. Howe,* 88 Or App 595, 601, 746 P2d 746 (1987), *rev den* 305 Or 274 (1988), on property owned by a person who police know provides capital and other assistance to that type of enterprise enabled the magistrate to infer reasonably that evidence of large scale marijuana cultivation would likely be found on the property. The search warrant affidavit was sufficient to establish probable cause.[10] ORS 133.545(4); *State v. Anspach, supra,* 298 Or at 381. Consequently, it was valid and the motions to suppress were properly denied.

Defendants' remaining arguments do not require discussion.

Affirmed.

---

[10] In its opinion and order, the court also appears to have considered supplementary information elicited at the hearing to enhance its conclusion that the affidavit established probable cause. That was error, because supplementary information may only detract from and not add to the sufficiency of an affidavit. *State v. Harp,* 299 Or 1, 9, 697 P2d 548 (1985). The error, however, was harmless, because the affidavit establishes probable cause, even without the supplementary material.