STATE OF OREGON,
*Appellant,*

*v.*

JESUS JOSE FLETES ALVAREZ,
*Respondent.*

(CF 87-516; CF 87-515;
CA A46557 (Control); A47174)
(Cases Consolidated)

763 P2d 1204

Janet A. Klapstein, Assistant Attorney General, Salem,

argued the cause for appellant. With her on the brief were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Ingrid A. McFarland, Deputy Public Defender, Salem, argued the cause for respondent. With her on the brief was Gary D. Babcock, Public Defender, Salem.

Before Richardson, Presiding Judge, and Deits and Riggs, Judges.

RIGGS, J.

## RIGGS, J.

The state appeals an order suppressing evidence obtained under a search warrant. We reverse. The trial court ruled that the supporting affidavit did not show firsthand knowledge by the confidential informant (first informant) and did not adequately set out the reliability and basis of knowledge by the unnamed third party informant (termed by the state as "unwitting citizen" and referred to hereafter as "second informant").

The affiant, Tyrrell, a police officer for over nine years, three years with the Oregon State Police Narcotics Unit, indicated that he had established an on-going relationship with the first informant. The credibility or reliability of the first informant is not in question.

We summarize the affidavit. The first informant told Tyrrell on July 26 or 27, 1987, that the second informant had told the first informant that "Jessie Alvarez," a Mexican male, was dealing cocaine out of his mobile home at space 50 in Degroff's Village in Hermiston. The second informant did not know that the first informant was cooperating with the police. On July 27, 1987, at 4:45 p.m., Tyrrell provided the first informant with $25 in bills, the serial numbers recorded, to purchase cocaine from defendant. The first informant and his vehicle were searched before leaving to pick up the second informant. The search assured Tyrrell that the first informant possessed no controlled substances.

The first informant could not buy directly from defendant and was required to have contact with him only through the second informant, who acted as an intermediary. The first informant accompanied the second informant to defendant's home and watched him go in and return with one-fourth gram of cocaine. The first informant told Tyrrell that, when the second informant returned with the cocaine, he reported that a "Jessie Alvarez" had sold the cocaine to him and that the second informant had seen a large chunk of cocaine, well in excess of an ounce, remaining in defendant's mobile home. Two police officers also observed the first informant and the second informant go to space 50 and the second informant go into the mobile home. At 5:35 p.m., the first informant turned over one-fourth gram of what field tested

positively as cocaine. The police again searched the first informant and his car to make sure that no other drugs were present.

On July 27, 1987, at about 7:00 p.m., defendant sold one eighth ounce of cocaine to the second informant for $250. It was paid for in bills supplied by Tyrrell, which were marked and the serial numbers recorded. The second informant reported to the first informant that defendant delivered the cocaine to the second informant's house.

Police checked the DMV records on a vehicle with license number HQB 791, which they saw parked in front of space 50. It was registered to "Jesus J. Alvarez" of 140 N.W. Butte, Hermiston. The first informant reported that defendant had lived at Degroff's Village for some time and apparently had not changed his registered address. Tyrrell obtained a search warrant on the basis of the information summarized. The search recovered six of the marked bills and a plastic bag of cocaine.

We know from the affidavit that the source of the second informant's information was his own personal knowledge. The issue, then, is whether there was sufficient basis in the affidavit to find that the second informant was credible and his information reliable.[1]

The trustworthiness of an unnamed informant may be established either by information from which it could be inferred he is credible or by the information given being itself reliable. ORS 133.545. Credibility relates to the informant's character traits, while informational reliability focuses on the trustworthiness of the information supplied on a particular occasion. *State v. Montigue,* 288 Or 359, 362-363, 605 P2d 656, *cert den* 449 US 846 (1980).

---

[1] In *State v. Henderson,* 40 Or App 27, 30, 594 P2d 419 (1979), we discussed how to determine if a search warrant affidavit based on hearsay establishes probable cause:

"In assessing the hearsay information to decide if it is trustworthy the magistrate must have sufficient raw data to make an independent judgment of trustworthiness. The data must first disclose the basis of the informant's knowledge, the first prong, so the magistrate may independently determine the weight to give such information in support of a conclusion the sought for evidence exists and in a particular place. Secondly, the data must be sufficient to inform the magistrate of the informant's veracity, the second prong. The veracity determination can be made either from information concerning the informant's credibility or from data supporting a conclusion his information is reliable."

■■     The statements of an informant can be deemed reliable, if they are against his penal interest. *State v. Middleton,* 73 Or App 592, 596, 700 P2d 309, *rev den* 299 Or 522 (1985). If the information given by the second informant is corroborated by another source given in the affidavit, that is sufficient to support the conclusion that he is telling the truth and not fabricating the story. *State v. Henderson, supra,* n 1, 40 Or App 31-32.

In this case, the second informant made numerous statements against his penal interest and performed illegal acts. Common sense indicates that he would not go through an elaborate charade regarding the name of the drug seller and the place where the drugs were and thereby expose himself to prosecution for illegal conduct. We know that the second informant was not trying to curry the favor of the police, because he never knew that the first informant was cooperating in any way with the police. In addition, much of the second informant's information was corroborated by police observation and independent investigation.

It is true that there was not extensive corroboration by the police of all of the statements made by the second informant. The drug buys were not true police "controlled buys," because the second informant was not searched before the buys. Also, the address on the automobile DMV registration was not that of the mobile home. However, we must examine the affidavit in a common sense, non-technical manner, *State v. Ashkar,* 24 Or App 447, 451, 545 P2d 912 (1976), and the resolution of doubtful or marginal cases should be determined consistently with the preference to be accorded warrants. *State v. Henderson, supra,* n 1, 40 Or App at 32. It was error to grant the motion to suppress.

Reversed and remanded.