Argued and submitted August 24, reversed and remanded for
trial December 30, 1981, reconsideration denied March 11,
petition for review denied April 6, 1982 (292 Or 825)

STATE OF OREGON,
*Appellant,*

*v.*

WILLIAM CLARENCE HASSELBACK,
*Respondent,*

(No. 10-80-10694, CA A20960)

STATE OF OREGON,
*Appellant,*

*v.*

WILLIAM JOHN HASSELBACK,
*Respondent,*

(No. 10-80-10695, CA A20961)

STATE OF OREGON,
*Appellant,*

*v.*

VIOLET A. HASSELBACK,
*Respondent.*

(No. 10-80-10693, CA A20962).
(Cases Consolidated)

637 P2d 1316

Richard A. Carlson, Eugene, argued the causes for appellant. On the briefs were J. Pat Horton, District Attorney for Lane County, and Ronald R. Sticka, Assistant District Attorney, Eugene.

Theodore R. Richter, Eugene, argued the causes and filed the briefs for respondents.

Before Buttler, Presiding Judge, Joseph, Chief Judge, and Warren, Judge.

JOSEPH, C. J.

## JOSEPH, C. J.

Pursuant to ORS 138.060(3), the state appeals a pretrial order suppressing marijuana, hashish and other items' found in defendants' home.[1] The issue is whether the police affidavit sufficiently established the reliability of the two named informants so as to justify issuance of a search warrant.

On October 20, 1980, Officer Lamm of the Cottage Grove Police Department stated in an affidavit that he had received information that a burglary had occurred at the home of a Mr. Asbury on October 16, 1980, and that silver and rare coins were taken. The affidavit also stated that on October 17, 1980, a Mrs. Reece reported that she had discovered watches and silver coins in her 15-year-old son's bedroom, items which she suspected were stolen. The affidavit further stated, in pertinent part:

"* * * I seized this property, and have been told by officer Craig that the victim, Mr. Asbury, identified it as a portion of the property taken in the burglary of his residence, when Mr. Asbury was shown the property at the Cottage Grove police station on 19 October 1980.

"That later in the evening of 17 Oct 80 I was informed by Mrs. Reece that her son Kevin and his friend Brian Marlow had just left her residence. I then observed Kevin and Brian walking on the street and contacted them. I attempted to take Brian into custody, as he was listed as a runaway, but he pulled free and escaped. Kevin Reece agreed to accompany me to the Cottage Grove Police station for an interview. He told me that he and Brian Marlow had committed the burglary of Mr. Asbury's residence, and that they had taken a large quantity of money including old silver coins. He said he and Brian returned to Reece's residence following the burglary and separated the coins, placing the pre-1964 coins into a green metal box which they had also stolen from Mr. Asbury and keeping the more recent coins in separate containers. He also told me that on 17 Oct 80 he and Brian Marlow took the box of older coins and hid it in some bushes. I recovered the box at the location indicated by Kevin Reece, but the coins were not in it.

"That I have spoken with Officer Arthur Smith of CGPD and have read his report dated 20 Oct (CGPD case #80-3788).

---

[1] The cases have been consolidated for decision on the court's own motion.

I was told that on 20 Oct 80 he observed and arrested Brian Marlow, seizing from Brian Marlow approximately 35 grams of what he identified as the controlled substance hashish. I interviewed Brian Marlow on 20 Oct 80 at the Cottage Grove police station. He told me that he and Kevin Reece had committed the burglary at Mr. Asbury's residence. He confirmed Kevin Reece's account given above, including that they had entered through a window at the rear of the residence. He added that after the coins were separated, he and Kevin traded a number of the coins which were in the green metal box to a subject whom he identified as Bill Hasselback. He stated that he and Kevin went to Bill Hasselback's house on 17 Oct 80 and gave him the coins out of the green metal box. Mr. Hasselback placed them in a container and put them in a bedroom at the residence. In exchange, Mr. Hasselback gave Brian Marlow a quantity of hashish, which was the hashish seized by officer Smith.

"That on 20 Oct 80 I re-interviewed Kevin Reece in the presence of his court-appointed attorney. Kevin stated that on 17 Oct 80 he had gone to Bill Hasselback's house on highway 99 South south of Cottage Grove with Brian Marlow, that they had given the old silver coins from the green metal box to Bill Hasselback, that Mr. Hasselback placed them in a blue-colored tin can and placed the can in the bedroom. He stated that Mr. Hasselback said that 'these old coins are collector's items, I'm just going to put them away.' In exchange, Bill Hasselback gave Brian Marlow a quantity of hashish. Kevin and Brian then hid the green metal box at the location where I had earlier recovered it.

"That I have been informed by Lt. Pat Murphy of CGPD that on 20 Oct 80 he spoke with Norman Lloyd Miller, DOB: 8-8-65, who told him that he had seen Brian Marlow, Kevin Reece, and Bill Hasselback together on 17 Oct 80 at a park in Cottage Grove, and observed a quantity of hashish at that time.

"* * * * *

"Wherefore your affiant has probable cause to believe and does believe that evidence of the crimes of Burglary and of Unlawfully Furnishing a Controlled Substance, to wit: a blue tin can and a quantity of pre-1964 silver coins, United States and Canadian, is presently located in the residence at 77420 Highway 99 South, Cottage Grove, Lane County, Oregon, further described above, and therefore respectfully requests this Court to issue its warrant to search the

above-described residence and its curtilage at 77420 Highway 99 South, Cottage Grove, Lane County, Oregon, for the above-described can and coins."

A search warrant was issued and executed. As a result, the three defendants were each charged with one count of unlawful manufacture of a controlled substance. ORS 475.992(1). William John Hasselback was charged with one count of unlawful possession of a controlled substance, and Violet Hasselback and William Clarence Hasselback were each charged with two counts of unlawful possession. ORS 475.992(4).

■■    At the suppression hearing, no evidence was presented except the search warrant and the supporting affidavit. The trial court found that the affidavit did not

"* * * contain sufficient indicia of reliability of the two named participants in the criminal acts to justify issuance of a search warrant"

and suppressed the evidence found in the search.

The test for determining the sufficiency of an affidavit based on facts supplied by an informant involves two "prongs": (1) whether the affidavit sets forth the informant's "basis of knowledge" and (2) whether it states facts showing the informant's "veracity" by demonstrating either that the informant is credible or that his information is reliable. *State v. Carlile,* 290 Or 161, 164, 619 P2d 1280 (1980); *State v. Montigue,* 288 Or 359, 362, 605 P2d 656 (1980). The first part of the test was clearly met here. The basis of the informants' knowledge was first-hand experience: they traded stolen coins for hashish in defendants' home.[2] *See State v. Mellinger,* 52 Or

---

[2] Defendants contend that the affidavit did not establish that the informants and Officer Lamm or his fellow officers had any training in recognizing hashish. Although it is perhaps becoming unlikely that 15-year-olds need formal training in order to identify marijuana or hashish, at the very least it would have been unreasonable for the magistrate to conclude that a police officer could not recognize them. The affidavit stated that Officer Smith seized hashish from Brian Marlow, who asserted he got it at defendants' house. Even if Marlow could not recognize hashish, there is no doubt that he could indicate where he got the mysterious substance. *Cf. State v. Mellinger, supra,* 52 Or App at 25 (affidavit which contained allegation that "confidential reliable informant" observed marijuana in a residence was not insufficient despite its failure to allege the informant's expertise in recognizing marijuana); *see also, State v. Diaz,* 3 Or App 498, 502, 473 P2d 675 (1970), where an informant's statement that defendant had "what appeared" to be heroin was sufficient to establish probable cause to search.

App 21, 627 P2d 897 (1981); *State v. Henderson,* 40 Or App 27, 594 P2d 419 (1979); *State v. Diaz,* 29 Or App 523, 564 P2d 1066 (1977).

■ Defendants argue that the second part of the test was not met, because the boys' statements were not corroborated by the police. They rely on *State v. Carlile, supra,* 290 Or at 168, for the proposition that some independent police corroboration is *required* when the informant is named and is criminally involved with the defendant. That is reading *Carlile* too broadly. What is crucial to the inquiry is whether the affidavit established grounds to believe the informant's statements. Police corroboration may do it, but so, too, may corroboration by co-informants. What we said in *State v. Henderson, supra,* 40 Or App at 31-32, holds:

"*** If the information given by the informant is corroborated by another source disclosed in the affidavit, there is a sufficient basis to conclude he is telling the truth and not fabricating the story from whole cloth."

The same information given independently by two sources supplies a basis for believing the information to be true. Police confirmation of that information would strengthen that belief, but it is not required.[3]

■ Kevin Reece and Brian Marlow were interviewed separately. Both admitted the burglary and claimed that the old silver coins from the stolen green metal box were given to defendant in exchange for hashish. That they possessed hashish was corroborated by Norman Miller. They truthfully reported the location of the green metal box. The information was sufficient to support a conclusion that hashish and stolen coins would be found at defendants' residence. The fact that the informants were juveniles does not detract from their veracity.

Reversed and remanded for trial.

---

[3] Defendants confuse the notions of (1) *the police having evidence to corroborate a claim* made by an informant and (2) *the police themselves corroborating* the claim. Although the latter notion is included in the former, the two are not equivalent. *Carlile* required that police have evidence to corroborate an informant's claim when he is criminally involved with defendant.