Argued and submitted February 19, affirmed in part; reversed in part and remanded for trial July 21, reconsideration denied September 16, petition for review denied December 21, 1982 (294 Or 295)

## STATE OF OREGON,
*Appellant - Cross-Respondent,*

*v.*

## EARL EDWARD JONES,
*Respondent - Cross-Appellant.*

(Nos. 28471, 28475, 28476,
CA A21260 (Control),
A21261, A21262)
(Cases Consolidated)

648 P2d 869

Stephen F. Peifer, Assistant Attorney General, Salem, argued the cause for appellant - cross-respondent. With him on the brief were Dave Frohnmayer, Attorney General, and William F. Gary, Solicitor General, Salem.

David E. Groom, Deputy Public Defender, Salem, argued the cause for respondent - cross-appellant. With him on the brief was Gary D. Babcock, Public Defender, Salem.

Before Gillette, Presiding Judge, Joseph, Chief Judge, and Young, Judge.

GILLETTE, P. J.

## GILLETTE, P. J.

Defendant was charged in three indictments with two counts of burglary in the first degree and two counts of burglary in the second degree after police officers seized certain items from his car and from his parents' home. The state appeals a pretrial order in these consolidated cases granting in part defendant's motion to suppress the evidence seized. Defendant cross-appeals, contending that the motion should have been granted in its entirety. We affirm in part and reverse in part.

On March 26, 1981, officer Janet Davidson obtained and executed a warrant to search the home of defendant's parents. The affidavit for the warrant contained the following information provided to Davidson by four individuals: Rhoda Jones and Lynda Johnson reported burglaries and described items that had been taken from their homes[1] sometime between March 12 and March 16, 1981. Johnson also stated that defendant had come to her home on March 11, 1981, to inquire about mowing her lawn; she told him to return on March 13 but later changed her plans and went out of town on March 12. Sharon Voldrecht informed Davidson that she was a neighbor of Lynda Johnson and that defendant had come to her house on March 13 asking where the Johnsons were and when they would be back. She was suspicious of defendant because, although he asked about mowing lawns, it was after dark and he did not have a lawnmower. Joy Laverty identified herself as a friend of defendant's sister. She stated that she was at the home of defendant's parents on either March 9 or 10 and overheard defendant and his brother arguing. She heard defendant's brother threaten to tell their father about some silverware defendant had stolen. She further stated that on March 14, while she was again visiting defendant's sister and brother at the Jones' residence, defendant "brought out a lot of coins and jewelry from his bedroom; and asked if anyone would like to buy any of it * * *." She described in detail several of the items

---

[1] The affidavit stated that Rhoda Jones was "looking after" her mother's home while her mother was ill, and indicated that she had discovered the burglary there. It is not clear whether she was living in her mother's house at that time.

she saw in defendant's possession at that time. Her descriptions of several of the items closely matched the descriptions given by Rhoda Jones and Lynda Johnson of items taken from their homes.

A warrant was obtained to search the Jones' home, identifying as the property to be seized the items particularly described by the informants. When the warrant was executed, defendant's parents told the officers that their son had moved out of their home about a week and a half before and had taken most of his personal belongings with him. They indicated, however, that he had left some things there. The officers seized approximately 56 items, only one of which was listed in the search warrant. Most of the items seized were jewelry and coins. Davidson testified that some of the property was similar to that described in other burglary reports she had seen, but she did not specify which of the items she so identified.

During the search of the home, police officers were told where defendant was living. They went to defendant's apartment and found him there. Davidson told defendant about the search at his parents' house and read him his rights from a "rights card," which defendant signed. Defendant then consented to a search of his car, accompanied the officers to it and opened the trunk on request. The trunk contained "quite a number" of power tools, a chainsaw, a suitcase, a case of oil and other items. Defendant opened the suitcase for the officers. Inside, lying on top of some clothes, was a handgun. Again on request, defendant opened a briefcase which had been in the passenger compartment of the car. Inside were several large hunting knives and numerous pieces of jewelry, including a bracelet inscribed with a name and telephone number. Defendant also opened the glove compartment, where other items were found.

A telephone call made during the search revealed that the handgun and inscribed bracelet had been stolen. The officers then seized the gun, the jewelry and some coins found in the car and arrested defendant. The other items were left in the car, which was impounded. A search warrant was later obtained for the car. That search is not in issue here.

.

Defendant moved to suppress all of the items seized from his parents' home, alleging that the affidavit supporting the warrant did not establish probable cause and that the items seized were outside the scope of the warrant and were not contraband or otherwise seizable. The trial court held the affidavit sufficient but found that there was no probable cause or exigent circumstances to justify the seizure of the items not named in the warrant. The trial court further found that defendant consented to the search of the car but suppressed the evidence anyway, because it found that defendant had consented only to the search and had not consented to the seizure of the items. The court held that there was no probable cause or exigent circumstances to justify the seizure.

We first address defendant's cross-appeal. He contends that the search warrant for his parents' home was not supported by probable cause and that all that followed from that search must be suppressed. He argues that the "veracity" of the informants was not established and that the information contained in the affidavit was stale because of the 12 days between the time the informant reported seeing the stolen items in defendant's possession and the date on which the warrant was issued and executed.

Defendant's first contention concerns the application of the *Aguilar/Spinelli*[2] test for determining the trustworthiness of information offered to show probable cause. That test was set forth in *State v. Montigue,* 288 Or 359, 362, 605 P2d 656 (1980), as:

"1. The affidavit must set forth informant's 'basis of knowledge.'

"2. The affidavit must set forth facts showing the informant's 'veracity,' either by showing:

"a. The informant is credible, or

"b. That his information is reliable."

Defendant's challenge here, as in *Montigue,* is under the second prong of that test.

■ We find that the veracity of the informants is sufficiently established in the affidavit. Each of the four

[2] *Aguilar v. Texas,* 378 US 108, 84 S Ct 1509, 12 L Ed 2d 723 (1964); *Spinelli v. United States,* 393 US 410, 89 S Ct 584, 21 L Ed 2d 637 (1969).

informants is a named "citizen-informer" who is not criminally involved. That is some indication of veracity. In addition, the information provided by each is corroborated by the information provided by the others.

> "* * * If the information given by the informant is corroborated by another source disclosed in the affidavit there is sufficient basis to conclude he is telling the truth and not fabricating the story from whole cloth." *State v. Henderson*, 40 Or App 27, 31-32, 594 P2d 419 (1979); *see State v. Hasselback*, 55 Or App 281, 637 P2d 1316 (1981), *rev den* 292 Or 825 (1982).

Defendant's argument that the information contained in the affidavit is stale is based on the fact that Laverty reported that defendant asked if anyone wanted to buy any of the coins and jewelry he displayed to her and to his brother and sister. Defendant relies on *State v. Dunavant*, 250 Or 570, 444 P2d 1 (1968), in which the court considered as one factor in finding the affidavit insufficient to establish probable cause that the affidavit "affirmatively reveals that at least six days before the warrant issued the defendant was actively engaged in disposing of the loot, rendering it less likely that any was present when the magistrate was asked to authorize a search." 250 Or at 578. The "loot" involved in *Dunavant* consisted of $75 in coins and four books of green stamps. The green stamps had been redeemed six days before the warrant issued.

■ *Dunavant* does not help defendant here. Laverty reported that defendant had "a lot of coins and jewelry." The fact that he offered to sell some of it to his sister and brother and to Laverty, even if it does indicate that he was "actively engaged in disposing of the loot," is insufficient to make unlikely that any "loot" remained. There is no suggestion that any of the three accepted defendant's offer or that defendant had made other attempts to dispose of any of the items.

■ Furthermore, this case does not involve the type of readily consumable contraband in an unspecified amount as in *State v. Kittredge/Anderson*, 36 Or App 603, 585 P2d 423 (1978). The question whether the lapse of time is too long to justify a finding of probable cause depends upon all the circumstances. *State v. Ingram*, 251 Or 324, 445 P2d

503 (1968); *State v. Kirkpatrick,* 45 Or App 899, 609 P2d 433, *rev den* 289 Or 337 (1980). We conclude that the affidavit here established probable cause to believe that the stolen property would be in the Jones' house.

■ The state appeals the suppression of all items seized that were not described in the warrant. Defendant's motion to suppress contended that the items were "beyond the scope of the search warrant and did not constitute contraband nor were they otherwise seizable." The state does not contend that the items suppressed were described in the warrant but argues that they were nonetheless validly seized. The state had the burden of showing that the seizure was proper. *State v. Miller,* 269 Or 328, 524 P2d 1399 (1974); *State v. Kelgard,* 40 Or App 205, 594 P2d 1271, *rev den* (1979). The trial court found only that the seizure was not based on probable cause or exigent circumstances.

■ The state advances two theories to justify the seizure of the items not listed in the warrant.[3] First, it contends that the seizure was allowed by the consent of defendant's parents. Our examination of the record does not disclose any indication that this theory was presented to the trial judge. We therefore decline to consider it on appeal.

■ The state also advances the theory of inadvertent discovery to support the seizure of the items. It cites ORS 133.585:

> "* * * If in the course of the search the officer discovers things, not specified in the warrant, which he has probable cause to believe to be subject to seizure under ORS 133.535 [and] which he did not have probable cause to expect to find, he shall also take possession of the things discovered."

Thus, if the officers executing the warrant had probable cause to believe that the items they had discovered during the course of the search were evidence or fruits of a crime, or contraband, *see* ORS 133.535, they were authorized to

---

[3] The state also contends that defendant had no expectation of privacy in a dresser drawer in which certain of the articles were found, because he testified at the hearing that the dresser was used exclusively by his brother. That argument was not made in the trial court.

seize those items, *provided that* they did not have probable cause to expect to find those items when they obtained the search warrant. In other words, the discovery of the evidence must have been inadvertent.

■      The affidavit for the warrant itself, however, reveals that officer Davidson had probable cause to believe that defendant had, along with the items described, "a lot of coins and jewelry" including "several old coins and a lot of old, fancy rings, * * * and other jewelry." That information was provided by the informant Laverty. The state may not now claim that the discovery of the coins and jewelry was inadvertent. Suppression of those evidentiary items was proper. On the other hand, those items, other than jewelry and coins, found intermingled with the items believed to be stolen, are admissible in evidence, because their discovery was inadvertent and there was probable cause to believe that they, too, were stolen.[4] *See State v. Elk,* 249 Or 614, 439 P2d 1011 (1968); *State v. Temple,* 7 Or App 91, 488 P2d 1380, *rev den* (1971), *cert den* 406 US 973 (1972).

As to the search of defendant's car, the trial court found that defendant consented knowingly, voluntarily and intelligently and that the consent extended to all parts of the vehicle and to all containers found in it. The court, however, excluded the evidence on the grounds that defendant consented only to the search and not to the seizure and that the state failed to show probable cause or exigent circumstances for the seizure.

Defendant in his brief in this court concedes that the determination, made during the course of the search, that a handgun and a bracelet found in the car were stolen gave police probable cause to seize the other items. Defendant contends, however, that the entire search was unlawful because his consent was invalid. He contends that his consent was not voluntary, because he did not know he had the right to refuse, he believed that if he refused he would be arrested and the search would occur anyway and he believed that the warrant to search his parents' home extended to his car as well.

---

[4] The other items included numerous watches, pocket knives, miscellaneous articles of silver and a clock radio.

■ Defendant points only to the fact that two uniformed officers woke him up at 12:30 a.m. and began asking questions and to his own misapprehensions about the authority to search. He was, however, informed of his rights from a "rights card" before being asked to consent to the search. Although he testified that he was not told that he could refuse consent to the search, Davidson testified that she did advise defendant that he did not have to consent. The issue before the trial court, and us, is whether defendant's consent was given by his own free will or whether it was the result of coercion, express or implied. *State v. Kennedy,* 290 Or 493, 624 P2d 99 (1981). The evidence is such that the trial court, as a rational trier of fact, could have ruled either way. This necessarily means that the historical facts support the trial court's finding of consent. We cannot disturb such a conclusion. *Ball v. Gladden,* 250 Or 485, 443 P2d 621 (1968).

The trial court did not err in finding defendant's consent to the search of the car to be valid. Defendant concedes that the seizure of the evidence was proper if the consent was valid. The trial court therefore improperly suppressed evidence of the items seized during the consent search of defendant's car.

Affirmed in part; reversed in part and remanded for trial.