Argued and submitted April 6, the decision of the Court of Appeals affirmed and remanded to the the trial court June 27, 1989

STATE OF OREGON,
*Respondent on Review,*

*v.*

JESUS JOSE FLETES ALVAREZ,
*Petitioner on Review.*

(CF 87-516, CF 87-515;
CA A46557 (Control), A47174; SC S35769)
(Cases Consolidated)

776 P2d 1283

Ingrid A. MacFarlane, Salem, argued the cause for petitioner on review. With her on the petition was Gary D. Babcock, Public Defender of Oregon, Salem.

Janet A. Klapstein, Assistant Attorney General, Salem, argued the cause for respondent on review. Also on the response were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

CARSON, J.

**CARSON, J.**

This case concerns whether information from an unnamed informant was sufficiently reliable to support a determination of probable cause to issue a search warrant. Along the way, we decide whether a declaration against penal interest contributed to the reliability of the informant's information when the informant did not realize that he or she was speaking to a person cooperating with the police.

The facts, taken from the affidavit submitted with the application for the search warrant, are as follows:

Officer Tyrrell has been a police officer for almost 10 years. For about three years, he has been a member of the Oregon State Police Narcotics Unit. He has a working relationship with informant #1 who, in the past, has given information to police officers leading to the issuance of search warrants. Those warrants have led to the seizure of illegal drugs and to several arrests.

In July 1987, informant #1 spoke with Tyrrell about information from an "unwitting citizen" (informant #2). Informant #2 had told informant #1 that "Jessie Alvarez" dealt cocaine from his mobile home at space number 50 in a mobile home park in Hermiston. On July 27, Tyrrell contacted informant #1 about buying cocaine from Alvarez. Informant #1 replied that, although he or she was unable to buy directly from Alvarez, he or she might accompany informant #2 to Alvarez's mobile home, watch informant #2 enter the mobile home, and return with the cocaine.

Tyrrell gave informant #1 $25 in marked currency. He searched informant #1 and informant #1's vehicle for controlled substances. Informant #1 then communicated with informant #2, and together the informants went to space number 50 in the mobile home park.

Once there, informant #1 gave informant #2 the $25. Informant #2 entered the mobile home and returned with one-quarter gram of cocaine. Informant #2 told informant #1 that "Jessie Alvarez" had sold Informant #2 the cocaine and that a significant amount of cocaine remained in the mobile home. Throughout this sequence of events, Tyrrell and another police officer observed the informants "from a distance."

After informant #2 was "dropped off," Tyrrell met with informant #1 and obtained the one-quarter gram of cocaine. Tyrrell again searched informant #1's vehicle. A field test confirmed that the substance was cocaine.

Finally, on the evening of July 27, Alvarez brought one-eighth ounce of cocaine to informant #2's residence. Informant #1 bought the one-eighth ounce for $250 at informant #2's residence.

The affidavit also states that Tyrrell tried to confirm that "Alvarez" lived at space number 50. Tyrrell had seen a vehicle at space number 50 bearing Oregon license plate number "HQB791." He checked Motor Vehicles Division records and determined that the vehicle was registered to "Jesus J. Alvarez" of "140 NW Butte, Hermiston." Informant #1 told Tyrrell, however, that "Alvarez has lived at the [mobile home park] for some time and has apparently failed to change his address."

On the basis of the affidavit, Tyrrell obtained a warrant to search the mobile home. The search recovered some of the marked currency and cocaine.

Defendant was charged with possession and delivery of a controlled substance.[1] He moved to suppress evidence obtained through the search, and the trial court granted the motion. The court ruled that the affidavit did not set forth the basis of knowledge of informant #1 or the reliability of informant #2.

The Court of Appeals reversed. *State v. Alvarez*, 93 Or App 714, 763 P2d 1204 (1988). We granted review to address the issue raised by defendant in his petition to this court: Whether information from informant #2 was sufficiently reliable to support a determination of probable cause.

■ Under ORS 133.545(4),[2] an affidavit based upon hearsay must: (1) Disclose, as far as possible, the means by

---

[1] On motion by the state, the Court of Appeals consolidated the separate trial court proceedings for purposes of appeal on February 18, 1988.

[2] ORS 133.545(4) provides, in part:

"If an affidavit is based in whole or in part on hearsay, the affiant shall set forth facts bearing on any unnamed informant's reliability and shall disclose, as far as possible, the means by which the information was obtained."

which an informant obtained his information (the informant's so-called "basis of knowledge"); and (2) set forth facts bearing on any unnamed informant's "reliability." *See also State v. Carlile,* 290 Or 161, 164, 619 P2d 1280 (1980). We have referred to the "reliability" of an unnamed informant as his or her "veracity." *See State v. Carlile, supra.* Whether referred to as the "reliability" or "veracity" of an unnamed informant, however, this requirement may be satisfied: (1) By facts showing the informant to be "credible"; or (2) by facts showing information from the informant to be "reliable." *See id.* "Credible" and "reliable" require a word of explanation.

■     Credibility refers to an informant's "inherent and ongoing character as a person—his reputation as a truth-speaker or his demonstrated history of truth-speaking." Moylan, *Hearsay and Probable Cause: An Aguilar and Spinelli Primer,* 25 Mercer L Rev 741, 761 (1974); *see also* 1 LaFave, Search and Seizure 643, § 3.3(c) (2nd ed 1987).[3] When we focus upon whether an informant is credible, we often conclude that the informant should be believed because he or she has provided truthful information in the past.

■     When we focus upon the reliability of an informant's information, however, we consider something distinct from the credibility, character, or reputation for truthfulness of the informant. The reliability of an informant's information refers to circumstances assuring that the particular information is indeed trustworthy on a specific occasion. *See* Moylan, *supra.* An informant may be credible without his or her information being reliable, or vice versa. Accordingly, when we review an affidavit, we initially consider separately whether facts in the affidavit show the unnamed informant to be credible or his or her information to be reliable.[4]

---

[3] Both Judge Moylan and Professor LaFave were commenting on their interpretation of the Fourth Amendment to the federal constitution. However, it is apparent from the legislative history of the statute central to our discussion (ORS 133.545(4)) that the legislature was attempting to embody the special requirements of particularity required by the United States Supreme Court under the federal constitution. Proposed Oregon Criminal Procedure Code 72, § 133, Commentary (1972).

[4] Judge Moylan notes in this context:

"There is, to be sure, an element here of debating how many angels can stand upon the head of a pin. Arguably, supporting facts which show that an informant's information is 'reliable' thereby show also that the informant is, on that occasion at least, 'credible.' The 'credibility' of the person and the 'reliability' of his information are but facets of the same 'veracity' phenomenon." Moylan, *Hearsay and Probable Cause: An Aguilar and Spinelli Primer,* 25 Mercer L Rev 741, 761 (1974).

Here, we are concerned with the reliability of the information provided by informant #2.[5] Informant #2 told informant #1 that he or she had purchased cocaine from the mobile home and that cocaine remained in the mobile home. We review the affidavit to determine whether that information was reliable.

In doing so, we first confront a question urged upon us by defendant: Whether the statements of informant #2, when considered as declarations against penal interest, contributed to the reliability of the information provided by informant #2.

In *State v. Carlile, supra,* 290 Or at 167, this court discussed the place of a declaration against penal interest in establishing the reliability of information from an informant:

> "We agree that an admission of criminal activity does not go far in establishing the informant as a generally credible source. Police informers, who often are paid or protected informers drawn from the criminal milieu, are 'almost universally viewed with a jaundiced eye,' especially when they hide behind the cloak of anonymity. However, circumstances of a particular case may indicate to a magistrate that the informer admitting her criminal involvement is providing reliable information on this occasion." (Citation omitted.)

■■ In essence, defendant does not argue that informant #2 did *not* make a declaration against penal interest upon stating that he or she had bought cocaine in the mobile home; rather, defendant argues the *weight* to be accorded the declaration. Here, unlike in *Carlile,* the declaration was made to another informant who was cooperating with the police unbeknownst to the second informant. A declaration against penal interest is a declaration against penal interest, however, regardless of whether it is made to a judge, to a police officer, or to a neighbor over the back fence. Its character is not altered by a change in interlocutors although, as *Carlile* recognized, its indicia of reliability may.

---

[5] In this court, defendant does not challenge the "basis of knowledge" of informant #1. Similarly, there is no question presented about the "veracity" or "reliability" of informant #1 or the "basis of knowledge" of informant #2.

As the passage from *Carlile* also recognizes, a declaration against penal interest is entitled to *some* weight in determining the reliability of information conveyed by an informant. Although the declaration may "not go far" in establishing the reliability of the information, other "circumstances" may contribute to or bolster the reliability of the information thus conveyed.

Here, informant #2 declared against his or her penal interest that he or she had purchased cocaine inside the mobile home. Informant #2 then handed informant #1 a substance alleged to be cocaine. Subsequently, this substance tested positively for cocaine under circumstances assuring that it came from informant #2, *i.e.,* Tyrrell made certain that informant #1 did not independently possess cocaine by searching informant #1 before informant #1 went with informant #2 to the mobile home. Moreover, Tyrrell observed informant #2 enter the mobile home and return to informant #1; he then regrouped with informant #1 and recovered and tested the substance that proved to be cocaine. Taken together, these circumstances indicate that informant #2 was speaking the truth upon declaring that he or she had bought cocaine inside the mobile home and that cocaine remained in that location.

The decision of the Court of Appeals is affirmed. The case is remanded to the trial court for proceedings consistent with this opinion.