Argued and submitted October 27, 1993, affirmed April 20, 1994

STATE OF OREGON,
*Appellant,*

*v.*

RUSSELL J. MILKS,
*Respondent.*

(C911976CR; CA A76124 (Control))

STATE OF OREGON,
*Appellant,*

*v.*

CURTIS BRIAN SALES,
*Respondent.*

(C911977CR; CA A76125)
(Cases Consolidated)

872 P2d 988

Jonathan H. Fussner, Assistant Attorney General, argued the cause for appellant. With him on the brief were Theodore R. Kulongoski, Attorney General, and Virginia L. Linder, Solicitor General.

David E. Groom, Deputy Public Defender, argued the cause for respondents. With him on the brief was Sally L. Avera, Public Defender.

Before Deits, Presiding Judge, and Riggs and Haselton,* Judges.

RIGGS, J.

---

* Haselton, J., *vice* Durham, J.

## RIGGS, J.

In this consolidated criminal case,[1] defendants were charged with the manufacture, delivery and possession of a controlled substance. ORS 475.992. Before trial, defendants moved to suppress evidence seized pursuant to a search warrant. The court allowed the motion to suppress, finding that the affidavit in support of the search warrant did not establish probable cause. The state appeals, and we affirm.

On November 26, 1991, Washington County Sheriff's Deputy Allen received a telephone call from Peggy Stark reporting a marijuana growing operation. Stark told Allen that she was living with one of the defendants (Milks) who, she said, had set up the operation. She also said that she and Milks had fought the day before. She told Allen the address and telephone number of the apartment where the operation was located, and that the name on the apartment's telephone bill was Brian Desales. Stark reported numerous details that Milks had told her about the operation. Stark also recalled seeing what she thought were two or three grow lights in the back of Milks' truck shortly after Milks rented the apartment.

Allen investigated Stark and her allegations and found that Stark had been convicted twice for filing false police reports. Allen also discovered that police officers had gone to Stark's and Milks' residence earlier that day on a domestic disturbance civil standby call. While on that call, the officers had arrested Milks on an outstanding warrant. Milks was interviewed while in custody, and he denied involvement in any growing operation. In that interview, Milks admitted using marijuana and was unable to identify two keys on his key ring. Milks was then released.

Allen also called Portland General Electric (PGE) to check on the apartment's power consumption. A PGE representative told Allen that the current subscriber was Brian

---

[1] Defendants Milks and Sales were allegedly involved in the same marijuana growing operation and were charged with the same offenses. They both filed motions to suppress based on the insufficiency of the affidavit supporting the search warrant. The cases were consolidated because they present the same issue: was the affidavit in support of the search warrant sufficient to support probable cause. However, the affidavit supporting the search warrant was based solely on Milks' activities. Thus, if the affidavit was insufficient to constitute probable cause as to Milks, it was also insufficient to constitute probable cause as to Sales.

Desales. Allen calculated the current subscriber's average monthly power usage for March through August, 1991, and compared that figure to a previous tenant's average monthly power usage for March to August, 1990. That comparison showed that the current subscriber used, on average, 1007 more kilowatts per month than the previous tenant. Allen knew through training and experience that the typical grow light uses approximately 360 kilowatts per month. He concluded that the increased electric usage supported the use of approximately two or three grow lights.

Allen relayed all of the above information to a magistrate on the evening of November 26, and the magistrate approved a search warrant. Police officers executed the warrant and found evidence that led to the indictment of the two defendants in this case.

At a pretrial hearing on a motion to suppress, defendants challenged the sufficiency of the affidavit underlying the search warrant. The trial court granted their motion to suppress, finding that the informant was not reliable and that, without the informant's statements, there was insufficient evidence for a finding of probable cause on which to base a search warrant. The state appeals.

■ ■     Our review of whether an affidavit is sufficient to support the issuance of a search warrant is

> "to determine whether a neutral and detached magistrate could conclude, based on the facts and circumstances shown by the affidavit, that there was probable cause to believe that the search would discover things specified in the affidavit in the places requested to be searched. *See* ORS 133.555(1), (2). We are to construe the supporting affidavit in a commonsense and realistic fashion." *State v. Farrar*, 309 Or 132, 144-45, 786 P2d 161, *cert den* 498 US 879 (1990).

■■■     The state first challenges the trial court's conclusion that the informant was not reliable. Most of the information in the affidavit was supplied by a named informant; therefore, we look to "the totality of the circumstances disclosed in the affidavit" to determine if the information provided by the informant is sufficiently reliable to support issuance of a search warrant. *State v. Young*, 108 Or App 196, 202, 816 P2d 612 (1991), *recon den* 114 Or App 212, 834 P2d 1040, *rev den*

314 Or 392 (1992). The *Aguilar/Spinelli*[2] test, although not directly applicable to *named* informants, provides a framework for evaluating the "totality of the circumstances" confronting the magistrate. *State v. Farrar, supra*, 309 Or at 145. To meet the *Aguilar/Spinelli* test, an affidavit must disclose the informant's basis of knowledge and must set forth facts demonstrating the informant's "veracity" by indicating either that the informant is "credible" or that the information is "reliable" in this instance. *State v. Alvarez*, 308 Or 143, 147, 776 P2d 1283 (1989).[3]

■ ■ Most of the information in the affidavit came from Stark. She had personal knowledge of the information she provided. Stark was named in the affidavit, which supports the veracity of the informant. *State v. Carlile*, 290 Or 161, 165, 619 P2d 1280 (1980). However, Allen also informed the magistrate that Stark had been convicted twice for filing false police reports. A criminal record weighs against an inference of credibility. *State v. Strance*, 118 Or App 645, 649, 848 P2d 1226, *rev den* 317 Or 584 (1993). The criminal record is particularly damaging to an informant's credibility when the convictions are for filing false police reports. The trial court correctly concluded that Stark could not be found to be a credible informant.

■ Even if an informant is not credible, the circumstances may assure that the particular information is trustworthy, or reliable, on a specific occasion. *State v. Alvarez, supra*, 308 Or at 147. The trial court concluded that Stark's recent disputes with Milks gave her a motive to lie. The state asserts that Stark would inflict hardship on Milks only if the police were able to seize an actual grow operation and, therefore, Stark did not have a motive to lie. However, a search of the magnitude described in the affidavit would be known by

[2] That test was developed in two United States Supreme Court cases, *Aguilar v. Texas*, 378 US 108, 84 S Ct 1509, 12 L Ed 2d 723 (1964), and *Spinelli v. United States*, 393 US 410, 89 S Ct 584, 21 L Ed 2d 637 (1969). The *Aguilar/Spinelli* test has been codified in Oregon at ORS 133.545(4) and applies by its terms only to affidavits based on information from *unnamed* informants. *State v. Farrar, supra*, 309 Or at 144.

[3] Credibility refers to a person's ongoing character as a truth-teller; the informant's "demonstrated history of truth speaking." *State v. Alvarez, supra*, 308 Or at 147. Reliability refers to the circumstances insuring that the information is trustworthy in this instance. 308 Or at 147.

Stark to likely cause hardship to Milks, regardless of what was found. A neutral and detached magistrate would conclude that Stark had a motive to lie.

The circumstances assuring trustworthiness also include whether the information provided by the informant was corroborated. *State v. Farrar, supra,* 309 Or at 145. Allen was able to corroborate Milks' name and birthday, and that the apartment existed. Allen also found that the name Stark said was on the apartment's telephone bill matched the name on the PGE account. He also confirmed that Milks had, in fact, been arrested that afternoon. The corroborated facts here are minimal and none relate directly to the criminal activity. Although corroboration of noncriminal facts is relevant to establishing an informant's reliability, *State v. Hermach,* 53 Or App 412, 420, 632 P2d 466, *rev den* 291 Or 893 (1981), this information, coupled with a motive to lie, is insufficient to establish Stark's reliability in this case.

Stark also relayed to Allen details that she asserted Milks had told her about the marijuana growing operation. Those details included the number of plants, the number of harvests since the operation began, the amount of money Milks had spent on the operation and other similar information. Those details were not corroborated and, thus, do not support Stark's reliability. The state argues that the details were admissions against penal interest by Milks and, thus, entitled to belief. However, without corroboration to independently verify the details, *see, e.g., State v. Strance, supra,* 118 Or App at 649, the existence of the admissions depend on Stark's credibility. As we said in *State v. Henderson,* 40 Or App 27, 594 P2d 419 (1979), the magistrate must have "proof of the credibility of every person involved in the chain of information from the initial observer to the affiant." 40 Or App at 31. The admissions suffer from the same flaw as the rest of the information provided by Stark; her credibility was not established and, therefore, the admissions are entitled to no more belief than any other statement by Stark.[4]

---

[4] Notwithstanding the lack of credibility and reliability of those statements, we still consider them in our final analysis of "the totality of the circumstances confronting the magistrate."

The state next argues that, even viewing Stark's statements with caution, enough information was provided from other sources to establish probable cause. The other information on which the state relies is the analysis of the apartment's electric usage and the information obtained from Milks in the custodial interview.

Allen compared the current tenant's electric usage over a six-month period to a previous subscriber's usage over the same six months two years previously. That comparison revealed something, but not enough, about either tenant; it revealed only their usage relative to each other. The magistrate had no way of knowing whether the current tenant's power consumption was abnormally high, the previous tenant's was abnormally low or whether both were within the range of normal use.[5] The fact that electric usage increases when a new tenant occupies a residence may be a part of the totality of the circumstances, *State v. Brotherton*, 123 Or App 243, 248, 859 P2d 565 (1993), but without a comparison that reveals more,[6] that information does not establish probable cause. *State v. McBride, supra* n 6 at 276. The trial court correctly concluded that this information could not provide probable cause to support the issuance of a search warrant.

While Milks was in custody, he admitted that he had used marijuana and he could not identify two keys on his key ring. The state is correct that the admission of marijuana use

---

[5] Allen did divide the average monthly differential, 1,007 kilowatts, by the amount of electricity used by a typical grow light, 360 kilowatts. Allen asserted in the affidavit that this "shows an approximate two or three grow lights usage" at the apartment. However, "particular facts must be alleged which provide a basis" for such inferences. *State v. Carter/Grant*, 316 Or 6, 12, 848 P2d 599 (1993). The actual monthly disparity ranged from 489 kilowatts to 1,761 kilowatts. In addition, the previous tenant's usage in one month actually exceeded the current subscriber's usage for each of three months. Those figures are not explainable by the use of two or three grow lights. The facts and circumstances contained in the affidavit do not support the inference made.

[6] Such comparisons might include a comparison made by a utility company official who states that the defendant's electric usage was excessive, *State v. Young, supra*, 108 Or App at 199; a comparison to a number of similar structures used for the same purpose over the same period of time, *State v. Nuttall*, 97 Or App 285, 288, 776 P2d 26, *rev den* 308 Or 593 (1989); a comparison to estimated figures, from a utility company brochure that were previously found to be accurate, *State v. McBride*, 96 Or App 268, 272, 773 P2d 379, *rev den* 308 Or 184 (1989); and a comparison to "normal residential usage." *State v. Christen/Hankins*, 79 Or App 774, 777, 720 P2d 1303 (1986).

does lend some credence to the other information, but it is not enough, standing alone, to supply probable cause. The fact that Milks could not identify keys on his ring "merely supports an inference that some other fact is possible—as one among the range of many other and different possibilities." *State v. Carter/Grant, supra* n 5, 316 Or at 13. A possibility is not enough to support issuance of a search warrant. 316 Or at 13.

When no piece of information in an affidavit by itself is sufficient to constitute probable cause, the combined effect of all the information may still support the issuance of a search warrant. *State v. Strance, supra,* 118 Or App at 650. In this case, the combined effect of information from an unreliable informant, an electric usage analysis that lacks meaningful comparison and a suspect who admits using marijuana is not sufficient to constitute probable cause to issue a search warrant. The trial court did not err in granting defendant's motion to suppress.

Affirmed.