Argued and submitted April 18, reversed and remanded on appeal; affirmed on
cross-appeal September 27, 1995

STATE OF OREGON,
*Appellant - Cross-Respondent,*

*v.*

JEFFREY M. WHEELON
and LINDA J. ZOOK,
*Respondents - Cross-Appellants.*

(CR 92-465(A) & (B); CA A81165)

903 P2d 399

Janet A. Klapstein, Assistant Attorney General, argued the cause for appellant - cross-respondent. On the briefs were Theodore R. Kulongoski, Attorney General, Virginia L. Linder, Solicitor General, and Douglas F. Zier, Assistant Attorney General.

Richard Lee Barton argued the cause for respondents - cross-appellants. With him on the brief was Barton & Associates.

Before Riggs, Presiding Judge, and Landau and Leeson, Judges.

LANDAU, J.

Leeson, J., dissenting.

## LANDAU, J.

■ The state appeals an order suppressing evidence obtained pursuant to a search warrant. Defendants "cross-appeal,"[1] challenging the sufficiency of the affidavit in support of the warrant, as well as the constitutionality of the manner in which the warrant was executed. We reverse on appeal and affirm on cross-appeal.

The principal issue in this case is the sufficiency of the affidavit of an Oregon State Police Officer, who, after describing his experience and training in narcotics investigations, recited the following information that he had received from two citizen informants:

"Citizen Informant 1, hereafter referred to as CI 1, contacted me and advised that in the past CI 1 has assisted in the growing of marijuana and knows what growing marijuana looks like in the different stages of growth. CI 1 also advised me that CI 1 knows what growing marijuana smells like and the pungent odor it emits. CI 1 also stated that CI 1 knows what marijuana looks like and smells like in the dried form. CI 1 also advised that CI 1 has smoked dried marijuana in the past and knows its effects and what it smells like in its burning form.

"CI 1 told me that within the last five (5) days, CI 1 entered the property occupied by [defendants] at [defendants' address]. CI 1 described the property as being approximately one quarter of a mile north of Yamhill County Road NW Olson. The buildings on the curtilage consist of a main wooden frame two-story dwelling, a green approximately 30′ × 50′ pole barn, and another smaller building. CI 1 advised that while outside the green pole building, CI 1 could hear a humming noise. CI 1 said the humming was louder upon entering the green pole building via a sliding door. CI 1 said CI 1 observed on the floor of the pole building bags of potting soil and fertilizer. CI 1 said that CI 1 observed a ladder located to the right of the sliding door extending up to a trap door in the loft area of the green pole building. CI 1 said that upon climbing the ladder and entering the loft through [the]

---

[1] A cross-appeal is appropriate only if the responding party argues for a reversal of the judgment. *Artman v. Ray*, 263 Or 529, 533, 501 P2d 63, 502 P2d 1376 (1972). We understand defendant's arguments to be directed at sustaining the trial court's order on grounds that the trial court rejected. Those matters are more properly raised as cross-assignments of error, and we regard them as such in this case. ORAP 5.57.

trap door CI 1 smelled a strong odor of marijuana. CI 1 said CI 1 observed in the loft area a plywood walled-off area, about 10′ × 15′, with a single door entrance, and observed at least 25 marijuana plants which were approximately 5′ tall. CI 1 said CI 1 saw electrical wiring running on the floor of the loft area and some foil reflecting material on the floor. CI 1 also said CI 1 saw a large running box-type fan in the walled-off area.

"Citizen Informant 2, hereafter referred to as CI 2, contacted me and advised that in the past CI 2 has seen growing marijuana in the past. CI 2 also advised me that CI 2 knows what growing, drying, and dried marijuana looks and smells like. CI 2 also advised that CI 2 has smoked dried marijuana in the past and knows its effects and what it smells like in its burning form.

"CI 2 told me that within the last three (3) days, CI 2 entered the property occupied by [defendants] at [defendants' address]. CI 2 described the property as being approximately one-eighth of a mile north of Yamhill County Road NW Olson. CI 2 told me that the buildings on the curtilage consist of a main wooden frame two-story dwelling, a large green metal horse barn, two goat sheds, and a chicken coup. CI 2 advised me that while outside the green building, CI 2 heard what sounded like the hum of a large hornet's nest. CI 2 told me that, on investigating the source of the sound, CI 2 entered the horse barn through a sliding door. CI 2 said that CI 2 could not identify the source of the noise on the ground floor, but it appeared to be louder and coming from above. CI 2 said that CI 2 observed a trap door in the ceiling above CI 2's head. CI 2 said that CI 2 gained entry through the trap door entering a loft area, where CI 2 noted that the humming was louder and appeared to be coming from behind a plywood wall in the loft area. CI 2 said CI 2 noted a strong odor of marijuana in the loft area. CI 2 said that CI 2 looked into the area behind the plywood wall and observed at least 20 four to five foot tall marijuana plants hanging upside down from the ceiling of the horse barn. CI 2 said that CI 2 also noted that the marijuana plants were budded out with 2 to 3″ buds, and that the humming noise was a large fan in operation in the walled-off room."

The affiant also stated in the affidavit that he had gone to the entrance to defendants' property. He described the location of the driveway that the two informants told him extended for approximately 1/8 to 1/4 mile to defendants'

house. The affiant also described the mail box and a newspaper box located at the roadside near defendants' driveway. He confirmed from the county tax assessor's office the size of defendants' property and that it contains three taxable buildings: a dwelling, a pole barn and an old house used for storage. The affiant determined from the county assessor's office, Portland General Electric and the Department of Motor Vehicles that defendants reside on the property described by the informants.

Based on the affidavit, a magistrate issued a warrant to search defendants' property and buildings. State police officers searched the premises and, with the assistance of several members of the Oregon National Guard (Guard), hauled away more than 100 marijuana plants and related paraphernalia. Defendants were charged with multiple counts of manufacture, delivery and possession of a controlled substance, ORS 475.992, and with two counts of child neglect. ORS 163.547.

Defendants moved to controvert, arguing that, among other things, the affidavit gives the false impression that the two citizen informants viewed defendants' premises at different times, when they actually viewed the premises at the same time. Defendants also moved to suppress all evidence obtained from the search. According to defendants, (1) the affidavit is insufficient to establish probable cause; (2) the observations of the citizen informants were unconstitutional, because they were acting as agents of the state and trespassed on defendants' property to view defendants' premises; and (3) the search was unconstitutional, because it involved the use of members of the state militia.

The trial court questioned the officer and the informants *in camera*, and then made the following findings:

"7.   The Court has taken testimony *in camera* of [affiant officer], and of the two unnamed informants. * * *

"8.   The informants in this case did not enter the property at the behest or encouragement of the case agent, [affiant officer] and were, therefore, not acting as agents of law enforcement.

"9.   * * * [T]he informants in the affidavit did observe the key incriminating matters related in the affidavit, but not separately, independently or apart from each other. The

informants saw the key incriminating evidence described by the affiant in the affidavit at the same times and while they were together on the property.

"10. The Court further finds that the affidavit incorrectly reads as if the observations of the incriminating evidence by each informant were made separately, independently and apart from each other; as if there were different time frames for their separate observations * * *. * * * This gives a false light factual appearance in the affidavit of independent observations that cross-corroborate each other. This wording in the affidavit could be motivated either by an intent to inaccurately demonstrate independent cross-corroboration or by a belief that revelation of the fact that the informants were not acting independently could compromise their anonymity.

"11. The Court finds that persons who were members of the Oregon National Guard participated in the execution of the search warrant at the defendants' property as part of the Yamhill County Interagency Narcotics Team. The Governor of the State of Oregon has authorized the Oregon National Guard to cooperate with the Narcotics Team, but the actions of the Guard personnel *in this particular* case were not *specifically* authorized by the Governor. The Court finds that the participation here of the Guard was done under the direct supervision of a law enforcement agent authorized to execute search warrants.

"12. The affiant knew, or in the exercise of reasonable care should have known, that the key observations of illegal activity made by the informants were made in each other's presence at the same place and time." (Emphasis in original.)

The trial court then reached the following conclusions:

"1. The defendants have controverted the false light inference in the affidavit that firmly suggests that separate, independent and apart from each other informant observations were made of the key incriminating evidence, and that these omissions and misleading draftsmanship disrupted the issuing magistrate's inference drawing process.

"2. Having found that the affidavit was drafted to give an appearance of independent informant cross-corroboration, when in fact there was none, the Court concludes that the creation of this inference by the affiant placed the informant information in a false light and was not objectively reasonable in light of the facts known to the affiant at the

time of the submission of the affidavit to the issuing magistrate."

The trial court then ruled that defendants had proven, by a preponderance of the evidence, that the affidavit contained omissions of facts that led to an inaccurate inference that the informants observed the key incriminating information separately, independently and apart from each other. It held that the inaccurate inferences were material and that, therefore, there was no reason to defer to the issuing magistrate's decision on probable cause. It also ruled that, as a matter of law,

> "the affidavit must contain evidence showing independent and separate observations of the key incriminating evidence by the two informants, or contain sufficient police corroboration of the facts related, in order to establish the reliability of the informants."

The trial court reexamined the affidavit after removing the false inference that the informants had viewed the marijuana independent of one another and at different times. It concluded that the affidavit lacked an adequate showing of informant veracity and that, accordingly, it failed to establish probable cause. Consequently, it granted defendants' motion to suppress.

On appeal, the state does not challenge the trial court's findings of fact. Nor does it challenge the court's decision on defendants' motion to controvert. The state's sole argument is that, even after ignoring any inaccurate inferences that might otherwise be drawn from the affidavit, there remains an adequate showing of the veracity of the informants and, accordingly, of probable cause.

■ We review to determine whether the information in the affidavit was sufficient to allow a neutral and detached magistrate to conclude that there was probable cause to believe that defendants were growing marijuana in their barn. ORS 133.555(2); *State v. Harp*, 299 Or 1, 9, 697 P2d 548 (1985); *State v. Poppe*, 131 Or App 14, 20, 883 P2d 905, *rev den* 320 Or 492 (1994). An affidavit is sufficient to support a search warrant if the magistrate could reasonably conclude that the facts recited in the affidavit are true and that the items to be seized probably will be found in the location to be searched. *State v. Villagran*, 294 Or 404, 408, 657 P2d 1223

(1983); *Poppe*, 131 Or App at 14. When an affidavit is based on information supplied by informants, the affidavit must demonstrate the basis for the informants' knowledge and must include facts that establish the informants' veracity. ORS 133.545(4); *State v. Carlile*, 290 Or 161, 164, 619 P2d 1280 (1980). In this case, the basis for the informants' knowledge is direct observation, and defendants concede that that is sufficient. The focus of the dispute in this case is whether the affidavit satisfies the requirement that the veracity of the informants be established.

■■    The "veracity" of the informant refers to the extent to which the information supplied is reliable, that is, "trustworthy on a specific occasion." *State v. Alvarez*, 308 Or 143, 147, 776 P2d 1283 (1989). Veracity may be established in several ways, including corroboration by another informant, *State v. Jones*, 58 Or App 277, 282, 648 P2d 869, *rev den* 294 Or 295 (1982); corroboration by the police, *State v. Wilson*, 120 Or App 382, 388, 852 P2d 910, *rev den* 317 Or 584 (1993); the informant exposing himself or herself to liability for filing a false report, *State v. Montigue*, 288 Or 359, 367, 605 P2d 656, *cert den* 449 US 846 (1980); or by making statements against one's penal interests, *Alvarez*, 308 Or at 149.

■    When information is provided to the police by citizens who appear to have no connection with the crime being investigated, a lesser degree of proof is needed to establish their veracity. In that regard, our decision in *State v. Prince*, 93 Or App 106, 760 P2d 1356, *rev den* 307 Or 246 (1988), is instructive. In that case, one unnamed informant volunteered to police that the defendant kept his building boarded up, but nevertheless installed roof vents. Another informant, a local resident who had been contacted by the police, told the police that he observed the defendant keeping irregular working hours. Police then contacted a third informant, also a neighbor, who reported seeing marijuana plants growing outside the building. On the basis of that information, police obtained power records, which revealed high power usage. Police obtained a warrant, searched the defendant's building and seized marijuana and other evidence. The trial court denied the defendant's motion to suppress, and we affirmed. In reviewing the sufficiency of the affidavit, we first noted:

"The affidavit does not include information regarding the informants' veracity. However, because the information came from citizens apparently unconnected with the crime being investigated, rather than from criminals or from persons who were criminally involved, the degree of proof needed to establish veracity is less. The facts that one informant volunteered information and all three reported many of the same facts and that the officers were able independently to verify many of those facts by personal observations is evidence of the informants' veracity."

*Id.* at 111. (Citations omitted.)

The facts of this case are similar in all material respects to those in *Prince*. The affidavit in this case, as in *Prince*, contains information by more than one unnamed informant. As in *Prince*, it does not appear on the face of the affidavit that the informants were in any way connected with the crime that they observed, or that they were criminals or "criminally involved."[2] Thus, as in *Prince*, they are subject to a less demanding showing of veracity. The informants reported that they observed growing marijuana, and they described the location of defendants' property, the buildings on the property and that it was defendants who lived there. And, as in *Prince*, the sufficient information was corroborated not only by the other informant, but also by the police.

■ ■ Defendants argue that the facts of this case are distinguishable from *Prince* because, in *Prince*, the affidavit affirmatively stated that the informants were not criminally involved. According to defendants, without a similar affirmative statement, the informants in this case cannot be considered disinterested citizen informants. That argument, however, is not consistent with our standard of review. The question is whether the information in the affidavit would permit a neutral and detached magistrate to conclude that

---

[2] There is, for example, no evidence that either of the informants had a criminal record of any sort. The affidavit does say that both informants had, at some undisclosed time in their past, smoked marijuana and that one of the informants had "assisted in the growing of marijuana." We do not read *Prince* to say that, because an informant had at some time in his or her past smoked or grown marijuana, he or she cannot ever be considered a disinterested citizen for purposes of supplying information to the police and is forever branded "criminal" or "criminally involved." Indeed, in *Prince*, one of the three informants testified that he was familiar with and could identify marijuana. We nevertheless concluded that the informants did not appear to be criminals or criminally involved. 93 Or App at 109, 111.

the informants were not participants or criminals or otherwise criminally involved. The fact that the information in the affidavit may reasonably give rise to *other* inferences does not mean that the affidavit is insufficient. *State v. Donahue*, 93 Or App 341, 347, 762 P2d 1022 (1988), *rev den* 307 Or 303 (1989).

Defendants also insist that cross-corroboration, by itself, is insufficient to establish the veracity of an informant. We need not address that argument, because the information verified in this case was not merely corroborated by the informants, but also by the investigating officer.

Defendant complains that the officer's corroboration involved only commonly known facts and is, therefore, insufficient. The corroborated facts, however, are at least as substantial as the information we found sufficiently corroborated in *Prince*, in which the informants described no more than the appearance of the defendant's building, its location, the fact that it was boarded up and that it had new vents on the roof. 93 Or App at 111.

We conclude that the informants in this case were subject to the lesser showing of reliability that is required when information is supplied by disinterested citizens and that, in the light of that more lenient standard, the affidavit is sufficient.

There remain defendants' cross-assignments of error. Defendants argue that the affidavit fails to establish probable cause to believe that seizable evidence would be found at their property, for two reasons. First, they argue that the affidavit fails to establish the reliability of the informants. For the reasons discussed above, we reject that argument.

■ Second, defendants argue that the affidavit fails, because it is based on information supplied by informants who actually were agents of the police and who illegally trespassed on defendants' property. According to defendants, the informants were induced to trespass on their property by police encouragement and promises of a reward. The trial court, however, found that the informants had not been prompted by such inducement, and our review of the record — including the transcript of the sealed *in camera* hearing —

reveals evidence to support those findings. *State v. Ehly*, 317 Or 66, 74-75, 854 P2d 421 (1993).

■        Defendants also argue that the execution of the warrant was unconstitutional, because the Guard participated in it without direct, formal, written authorization from the Governor. The state argues that the use of the Guard was properly authorized. The trial court found that, although the Governor had not authorized the use of the Guard in this particular case, she had ordered the Guard to cooperate with the Yamhill County Interagency Narcotics Team. The trial court further found that, in this case, the Guard participated under the direct supervision of the state police. Defendant does not challenge those findings. The question, therefore, is whether the Governor's more general authorization suffices.

ORS 399.065(2) provides:

> "The Governor may order into active service of the state for such period, to such extent and such manner as the Governor may deem necessary units or individuals of the organized militia when in the judgment of the Governor the services of such units or individuals are required for the furtherance of the organization, maintenance, discipline or training of the organized militia or for ceremonial functions of the state government."

We note that the statute is broadly worded and contains no express requirement for the issuance of a formal, written order for each action the Guard is directed to take. To the contrary, the Governor is authorized to order the Guard to act "for such period, to such extent and such manner" as the Governor deems appropriate. *Id.*; *see also* ORS 399.075(1) (allowing use of militia upon "approval" of governor). The use of the Guard in this case was properly authorized.

We conclude that the trial court erred in granting defendants' motion to suppress.

Reversed and remanded on appeal; affirmed on cross-appeal.

**LEESON, J.,** dissenting.

I would affirm the trial court. My first disagreement with the majority is its conclusion that the lesser degree of proof regarding informant veracity that we allowed in *State v.*

*Prince*, 93 Or App 106, 760 P2d 1356, *rev den* 307 Or 246 (1988), should also apply here. It contends that "[t]he facts in this case are similar in all material respects to those in *Prince*." 137 Or App at 71. That is incorrect. The only similarity between *Prince* and this case is that in *Prince* information was supplied to the police by more than one unnamed informant. In *Prince*, the identities of each of the three informants were known to the police and the informants requested that they remain anonymous because they feared reprisals from the defendants. In this case, the affidavit states merely that the two informants "contacted [the affiant]." Nothing in the affidavit alleges facts from which the magistrate could infer that the affiant knew the identities of the informants. *See State v. Carter/Grant*, 316 Or 6, 12, 848 P2d 599 (1993) (*particularized* facts must be alleged that provide a basis for an inference).

It is true that informant reports made independently to the police are afforded some weight in establishing reliability. *State v. Hasselback*, 55 Or App 281, 286, 637 P2d 1316 (1981), *rev den* 292 Or 825 (1982). In *Prince*, each report was given independently to the police. The first informant initiated contact with the police and the others were contacted by the police in the course of their investigation. *Prince*, 93 Or App at 110. In this case, the informants contacted the affiant and the affidavit is silent about whether they made their reports to the affiant together or independently of one other.

In *Prince*, we could reasonably infer that the informants, who were known to the affiant, were not criminals or persons who were criminally involved and that they were "wholly disinterested citizen[s] providing information to the police at their request." *State v. Villagran*, 294 Or 404, 411, 657 P2d 1307 (1983).[1]

A careful reading of the affidavit in this case reveals that the informants were not disinterested citizens. The affidavit states that both informants had smoked marijuana in the past, an illegal act, and that one had assisted in growing marijuana, another illegal act. The affidavit further states

---

[1] Although one of the three informants admitted to being *familiar with* and having *seen* marijuana growing, that, by itself, is not illegal.

that the two unnamed informants went onto defendants' property, entered the interior of defendants' barn, and climbed to the second-story loft to observe the alleged grow operation. The affidavit does not explain whether the informants were on defendants' property with or without permission. Further, the affidavit is silent about whether the informants have a criminal history, whether they were involved in or connected with the crimes charged against defendants, and why the affiant withheld their identities from the magistrate. These facts put this case in stark contrast to *Prince*. The majority errs by allowing the lesser degree of proof regarding informant veracity than we allowed in *Prince*.

I also disagree with the majority's contention that the information in this case was corroborated by the affiant. 137 Or App at 72. The affiant's corroboration consisted only of going to the *entrance* to defendants' property, describing the location of the driveway that the two informants told him extended for approximately 1/8 to 1/4 mile to defendants' house and describing the mail box and a newspaper box located at the roadside near defendants' driveway.[2] He confirmed from the county tax assessor's office the size of defendants' property and that it contains three taxable buildings and he determined from the county assessor's office, the electric company, and the Department of Motor Vehicles that defendants resided on the property described by the informants. None of that information helped to establish the reliability of the informants regarding their reports of a marijuana grow operation on defendants' property. The affiant did not verify that the buildings were as described by the informants and provided no information about power consumption. Oregon appellate courts have consistently required an affiant to provide more by way of corroboration than was provided in this case. *See State v. Milks/Sales*, 127 Or App 397, 402, 872 P2d 988 (1994) (insufficient corroboration where officer verified only the defendant's name, address and that apartment existed; verified that name on telephone bill matched name on PGE account; confirmed the defendant

---

[2] Because the informants did not refer to the mail box or the newspaper box in their report, the affiant's observation of these items cannot be considered corroboration of those facts.

had been arrested that afternoon; and the informant had motive to lie). *Compare State v. Coffey*, 309 Or 342, 347, 788 P2d 424 (1990) (reliability established by officer confirmation of name and address of the defendant; informant's description of packaging of cocaine and its slang name; and positive polygraph test results); *State v. Binner*, 128 Or App 639, 648, 877 P2d 642, *rev den* 320 Or 325 (1994) (officer substantially corroborated detailed and private information including the defendant's address, that she was divorced, that her house had an unimproved attic and that the attic window was covered, and that she had an ongoing relationship with another defendant who repeatedly contacted a convicted drug trafficker); *Prince*, 93 Or App at 113 (police corroboration by personal observation that the shop had three roof vents, that it was entirely closed up; that the defendant's car was parked in the driveway; and detailed records showing a dramatic increase in electrical power use); and *State v. Dunning*, 81 Or App 296, 302, 724 P2d 924 (1986) (verified that the defendant and another are co-owners of business, the business office is located in an unmarked cubicle inside another office, and the defendant lives with a named woman who works for a named company; provided source of telephone number).

In sum, I think the trial court was correct that, because the affidavit lacked an adequate showing of informant veracity, the informants' statements must be excluded and, accordingly, that the affidavit failed to establish probable cause. That conclusion was correct, because without the informants' statements, the affidavit contains only the affiant's experience and training in narcotics investigations, the fact that the affiant confirmed the location of defendants' property and the existence of buildings on it, and that defendants lived there. Without the informants' statements, the affidavit alleges no incriminating facts that would allow a magistrate to conclude that there was probable cause to believe that defendants were growing marijuana in their barn. *Villagran*, 294 Or at 408.

The trial court should be affirmed and we should not reach defendants' cross-appeal.